## MARIE ROLLA *v.* MARIO ROLLA
### (AC 16368)

Foti, Schaller and Spear, Js.

Argued December 17, 1997—officially released May 26, 1998

*David P. Burke*, for the appellant (defendant).

*Lawrence P. Weisman*, with whom, on the brief, was *Debra A. Marino*, for the appellee (plaintiff).

SCHALLER, J. The defendant, Mario Rolla, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Marie Rolla. In his appeal, the defendant claims that the trial court improperly (1) found that the plaintiff had contributed equally to the accumulation and growth of the parties' assets, (2) awarded the plaintiff one half of the assets owned at the time of dissolution, (3) failed to take into account the effect of federal income taxes in awarding the plaintiff one half of the assets and (4) found the value of a building owned by the plaintiff to be $2,000,000. We affirm the judgment of the trial court.

The trial court found the following facts. The parties were married on May 15, 1954, in New York City. This was a first marriage for both parties. Two children were born of the marriage, Peter and Adrienne, both of whom have reached the age of majority. Both parties were sixty-four years of age at the time of trial.

Neither party brought any property or other financial assets to the marriage. Both parties are well educated. At the time of the marriage, the defendant had obtained a bachelor of arts degree in accounting from Pace University, and the plaintiff had earned a bachelor of arts degree in statistics from Hunter College. Shortly after their marriage, the defendant began attending law school at St. John's University, eventually obtaining his law degree and being admitted to practice in New York. During this time, the defendant continued his full-time employment as an accountant, and the plaintiff worked as an actuarial assistant. The plaintiff continued to work until the birth of the parties' first child in 1957. After that, the plaintiff remained at home with the children until the early 1970s, when she returned to work on a full-time basis. She continued working until 1986 or

1987. The income from her position as an actuarial assistant was approximately $35,000 per year.

Shortly after starting his practice as an attorney, the defendant became involved in acquiring, managing and disposing of companies. By his own testimony, the defendant was a "workaholic" and, although he provided for his family financially, he spent little time involved in family activities. He traveled extensively in connection with his business enterprises, returning home at irregular intervals. As a result, the parties' marriage gradually deteriorated.

Following the death of the defendant's mother, the frequency with which he returned home decreased. By 1986 or 1987, he had almost completely stopped returning home. The reason given by the defendant for this situation was that the plaintiff objected to and disapproved of his business activities. During that time, the plaintiff began to suffer from health problems, including migraine headaches, and was often under the care of physicians.

In 1986 or 1987, the plaintiff asked the defendant, and he agreed, to sign a document that she had drafted, which would entitle her to one half of his assets in the event of a divorce. That document provided that the defendant agreed to give the plaintiff, at the time of their divorce, one half of the value of all the assets of the companies in which he was then involved. In addition, the document provided that one half of the defendant's pension and moneys in bank accounts should also become the property of the plaintiff. The document also provided that if the defendant had failed to address certain issues, he agreed to submit all necessary details, papers, moneys, stock certificates and other documentation to the plaintiff.

Thereafter, the defendant conveyed to the plaintiff, in fee simple, the family condominium in Greenwich,

where the parties had lived since 1982. The defendant valued his 50 percent interest in the condominium at $300,000. He also conveyed to the plaintiff a commercial building, on which there was a long-term lease that would provide the plaintiff with annual net rental income of $200,000. After that transaction was completed, the plaintiff accepted the defendant's absence from the home and began to work on a part-time basis at a local library. In 1992, upon learning that the defendant had been involved in relationships with other women, the plaintiff brought this action for divorce, in which she alleged that the marriage had broken down irretrievably.

On August 5, 1996, the trial court rendered judgment dissolving the marriage. The trial court found the cause of the breakdown to be a combination of the defendant's frequent absences from home for extended periods, and the plaintiff's objections to the defendant's work and business enterprises. Thus, the court found that the defendant was primarily, but not entirely, responsible for the breakdown of the marriage. The trial court further found that both parties contributed equally to the marital estate and to the marriage, and had entered into an agreement in 1986 or 1987 to divide the assets equally in the event of a divorce.

The trial court found that the total marital assets as of the date of dissolution amounted to $18,304,411[1] and the plaintiff's portion was $4,168,411. The court ordered the defendant to contribute $4,983,794.50 to the plaintiff

[1] Although the trial court's orders state the total as $18,202,411, this appears to be a typographical error. The court states that "the defendant's total assets equal $14,136,000 and the plaintiff's total assets equal $4,168,411." Combining these two figures produces a total of $18,304,411, not the $18,202,411 stated by the court in its orders. The trial court's subsequent statement that "[d]ividing this total by two gives a total of $9,152,205.50" further suggests that it used the correct figure of $18,304,411 in its calculations, because $9,152,205.50 is one half of $18,304,411.

so that after the contribution, each would have $9,152,205.50, or one half of the marital assets. The court ordered the defendant to pay one half of this amount within three months of the issuance of the judgment and the balance within three months thereafter.

On September 24, 1996, the defendant filed a motion for articulation with the trial court, seeking guidance as to whether the court's order would permit the transfer of assets other than money having a present value equal to the amount provided for in the court's order, and as to how securities held in both parties' names were to be allocated. On December 18, 1996, the court issued a decision on that motion, specifying that its decision did not contemplate the defendant's transferring assets in kind and that the defendant was to choose the means by which he would comply with the court's order. With respect to the securities held in the names of both parties, the court ordered that they be divided equally between the parties.[2]

I

The defendant first claims that the trial court improperly found that the parties contributed equally to the accumulation and growth of the assets held by the parties as of the date of the dissolution. General Statutes § 46b-81[3] provides several factors that the court must

_____

[2] The text of the trial court's memorandum of decision on the motion for articulation, issued December 18, 1996, is as follows: "In response to the defendant's motion for articulation, the court's decision does not contemplate transferring assets in kind. How the defendant shall comply with the court's order is up to him. He has demonstrated his ability to acquire assets and to dispose of assets to meet his particular needs.

"The stocks and securities in the names of both parties hav[ing] a value of $180,000 shall be divided equally between the parties."

[3] General Statutes § 46b-81 (c) provides in relevant part: "In fixing the nature and value of the property, if any, to be assigned, the court . . . shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation,

consider in fixing the nature and value of the property to be assigned from one spouse to the other. One factor is the "contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

"The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Internal quotation marks omitted.) *Werblood* v. *Birnbach*, 41 Conn. App. 728, 730, 678 A.2d 1 (1996); *Karen* v. *Parciak-Karen*, 40 Conn. App. 697, 703, 673 A.2d 581 (1996); *Rummel* v. *Rummel*, 33 Conn. App. 214, 220, 635 A.2d 295 (1993); *Graham* v. *Graham*, 25 Conn. App. 41, 47, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991).

"[T]he factual findings of a trial court on any issue are reversible only if they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Schult* v. *Schult*, 40 Conn. App. 675, 682, 672 A.2d 959 (1996), aff'd, 241 Conn. 767, 699 A.2d 134 (1997). "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's*

amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

*Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Whether the parties made a contribution in the acquisition and preservation of property is a question of fact. *Sweet* v. *Sweet*, 190 Conn. 657, 663, 462 A.2d 1031 (1983); *O'Neill* v. *O'Neill*, 13 Conn. App. 300, 307, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). Accordingly, this court can reverse the trial court's finding that the parties contributed equally to the accumulation and growth of the assets held by the parties as of the date of the dissolution only if it is found to be without any reasonable basis in the evidence. See *Schult* v. *Schult*, supra, 40 Conn. App. 682; *Rosick* v. *Equipment Maintenance & Service, Inc.*, 33 Conn. App. 25, 40–41, 632 A.2d 1134 (1993).

In its memorandum of decision, the trial court found that the contributions of the parties were "virtually equal." In support of that finding, the trial court specifically referred to the following contributions by the plaintiff: keeping the home, taking care of the children until they finished college, and going to work, using her earnings to support the family.

In determining the parties' relative contributions within the meaning of § 46b-81, we have held that nonmonetary as well as monetary contributions are to be considered. *O'Neill* v. *O'Neill*, supra, 13 Conn. App. 311. "[T]he trial court must accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets." (Internal quotation marks omitted.) *Werblood* v. *Birnbach*, supra, 41 Conn. App. 735.

Among the facts found by the trial court was that the plaintiff remained at home, forgoing the opportunity to continue working full-time as an actuarial assistant from the birth of the couple's first child in 1957 until

the early 1970s. The court also found that the plaintiff had maintained the home and taken care of the children until they finished college and went to work. We have held that this type of nonmonetary contribution, in the form of care and rearing of the children of the marriage and upkeep of the family home, is one that should be taken into consideration in determining the parties' relative contributions to the marital estate and to the marriage. *O'Neill* v. *O'Neill,* supra, 13 Conn. App. 311–12.

Among the items of evidence adduced at trial was the written agreement entered into by the parties in 1986 or 1987. In the agreement, the defendant agreed to give the plaintiff one half of the value of all the assets of the companies in which he was involved in the event of their divorce. The language used in the agreement was as follows: "I . . . agree to give Marie Rolla *at the time of our divorce* one half of [the] value of all the assets of the companies in which I have and am still involved in. In addition, 1/2 of my pension, monies in bank accounts—wherever they may be, shall be 1/2 hers." (Emphasis added.) As if to resolve any ambiguity on this point, the agreement goes on to say, "If at this time, I have forgotten to mention anything I will agree to submit all the necessary details and papers." This language in the agreement shows that the defendant agreed to the terms of a document that provided for equal distribution of all marital assets at the time of the divorce, even including those not held in the marital estate at the time the agreement was drafted.

The language in the agreement provides additional support for the trial court's determination that both parties contributed equally to the marital estate. The agreement, by the use of the phrase "at the time of our divorce," reveals that both parties considered that eventuality and, if it occurred, they intended to divide the marital assets evenly. The trial court, therefore,

could reasonably have found that both parties believed, at the time that they signed the agreement, that it provided for a fair disposition of assets. The trial court could reasonably have concluded that implicit in the agreement giving the plaintiff 50 percent of the marital assets was the defendant's belief that the plaintiff had contributed equally to the accumulation and appreciation in value of those assets. The trial court, therefore, reasonably found that the parties contributed equally to the marital estate.

The trial court's memorandum of decision clearly indicates that it considered all of the factors enumerated in § 46b-81 (c) before finding that both parties had contributed equally to the marital estate.[4] Our Supreme Court has held that the trial court is not required to make explicit reference to the statutory criteria that it considered in making a decision nor to make express findings as to each statutory factor. *Caffe* v. *Caffe*, 240 Conn. 79, 82–83, 689 A.2d 468 (1997). We cannot say in this case, as we must if we are to reverse the trial court's decision in this regard, that the trial court "could not reasonably conclude as it did"; *Weiman* v. *Weiman*, 188 Conn. 232, 234–35, 449 A.2d 151 (1982); or that we are "left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Rosick* v. *Equipment Maintenance & Service, Inc.*, supra, 33 Conn. App. 41. We conclude that there was a reasonable evidentiary basis for the trial court's finding that the parties contributed equally to the marital estate.

II

The defendant next contends that the trial court improperly awarded the plaintiff one half of the assets

___

[4] The trial court used the following language in its memorandum of decision: "[U]nder all of the appropriate elements of § 46b-81 of the General Statutes;" and "having considered all of the elements set forth in §46b-81 of the General Statutes . . . ."

owned by the parties at the time of the dissolution. Although stated as one issue, the defendant actually makes two distinct claims. He claims that the trial court improperly determined that (1) the plaintiff should be awarded one half of the marital assets, and (2) the assets to be distributed were all of the marital assets as of the date of dissolution. We address these two issues separately.

## A

The defendant first claims that the trial court improperly determined that the plaintiff should be awarded one half of the marital assets. " '[T]he purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his.' " *Werblood* v. *Birnbach,* supra, 41 Conn. App. 735. In determining how to divide the assets of the marital estate between the parties in a dissolution action, a trial court is required to consider several factors set forth in § 46b-81 (c). " 'The court must consider *all* of the statutory criteria in determining how to divide the parties' property in a dissolution action.' " (Emphasis in original.) *Burns* v. *Burns,* 41 Conn. App. 716, 720, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 997 (1996). They are not, however, to be considered as ingredients in a recipe. " 'A ritualistic rendition of each and every statutory element would serve no useful purpose.' " *Caffe* v. *Caffe,* supra, 240 Conn. 83. The court is not required to make express factual findings as to each factor. *Savage* v. *Savage,* 25 Conn. App. 693, 701, 596 A.2d 23 (1991). The court is not required to give each factor equal weight. *Kane* v. *Parry,* 24 Conn. App. 307, 313–14, 588 A.2d 227 (1991). As long as it considers all of the criteria, the court may exercise broad discretion in dividing property. *Carpenter* v. *Carpenter,* 188 Conn. 736, 740–41, 453 A.2d 1151 (1982); *O'Neill* v. *O'Neill,* supra, 13 Conn. App. 306; *Debowsky* v. *Debowsky,* 12 Conn. App. 525, 526, 532 A.2d 591 (1987). "On appeal,

the defendant bears the burden of proving to this court that the trial court did not consider the proper criteria . . . ." (Internal quotation marks omitted.) *Burns* v. *Burns*, supra, 721.

The record in this case clearly shows that the trial court considered all of the relevant statutory factors. The trial court explicitly stated, prior to setting forth its findings and orders, that it "considered all of the elements set forth in § 46b-81 of the General Statutes." The court then went on to make findings as to the length of the marriage, the cause of the breakdown of the marriage, the contribution of each of the parties to the marital estate and the vocational skills, employability, and opportunities for future acquisition of capital assets and income of the parties. The defendant has failed to demonstrate that the trial court did not consider all of the statutory criteria. In fact, he does not mention a single statutory factor that the trial court failed to consider.

In his reply brief, the defendant contends that one of the reasons for the trial court's failure to comply with the requirements of the statute in its allocation of the property of the marital estate was its prior finding that the parties had contributed equally to the marital estate, which is referred to by him as a "gross misperception." As we stated in part I of this opinion, we disagree with the defendant's claim that this finding was without foundation in the record. Having held that the trial court's finding that the parties contributed equally to the marital estate had evidentiary basis and was not clearly erroneous, we hold that the trial court properly used that finding in its application of the statutory factors to determine the appropriate allocation of the assets of the marital estate.

The defendant also contends that the 1986 agreement does not support the trial court's finding that the assets

of the marital estate should be divided equally between the parties. As stated in part I of this opinion, the agreement is evidence tending to show that the parties' intent at that time was to make an equal division of their assets in the event of their divorce at some future time. That evidence, combined with the trial court's prior finding that the parties contributed equally to the marital estate, and the other findings made with respect to the statutory factors, serves further to support the trial court's ultimate decision ordering an equal division of the assets of the marital estate between the parties.

Construing every reasonable presumption, as we must, in favor of the correctness of the court's distribution of assets; *Puris* v. *Puris*, 30 Conn. App. 443, 449–50, 620 A.2d 829 (1993); see *Rummel* v. *Rummel*, supra, 33 Conn. App. 222; we conclude that the defendant has failed to demonstrate that the trial court abused its discretion. Accordingly, we conclude that the trial court's determination that the plaintiff should be awarded one half of the assets of the marital estate was not an abuse of discretion.

B

The defendant also claims that the trial court improperly determined that the assets to be distributed constituted all of the marital assets as of the date of dissolution. In support of this claim, the defendant points to the fact that the parties had functionally ceased to live as husband and wife in 1986 or 1987, dividing their financial holdings and going their separate ways at that time. The defendant also points to the plaintiff's lack of any contribution to the defendant's acquisition or growth in assets after the date of their separation. Accordingly, the defendant argues that since the plaintiff did not contribute in any way, monetarily or nonmonetarily, to the acquisition, preservation or appreciation in value of the assets of the marital

estate, she is not entitled to share in any assets acquired after that date or in the appreciation after that date of any previously acquired assets.

The division of property in a dissolution proceeding is governed by § 46b-81 (a), which provides in relevant part: "*At the time of entering a decree* . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife *all or any part* of the estate of the other. . . ." (Emphasis added.) The only time mentioned in this statute as controlling the entry of financial orders is the "time of entering a decree." It is therefore not unreasonable to conclude that this date was intended by the legislature to be used in determining the value of the marital assets assigned by the trial court to the parties. *Sunbury* v. *Sunbury*, 216 Conn. 673, 676, 583 A.2d 636 (1990).

In cases examining the issue of the time at which marital assets should be valued for purposes of distribution in a dissolution action, we have held that " '[i]n a dissolution action, marital property is valued as of the date of dissolution . . . . *Zern* v. *Zern*, 15 Conn. App. 292, 296, 544 A.2d 244 (1988).' " *Jackson* v. *Jackson*, 17 Conn. App. 431, 435, 553 A.2d 631 (1989). In *Zern*, we were faced with a situation similar to that in this case, where the plaintiff argued that contributions to a thrift plan and expenses incurred in maintaining certain property after the parties' separation that were made solely by the plaintiff should not be included in the assets to be divided upon dissolution. As we pointed out in *Zern*, however, the general rule is that "the parties' assets are to be valued as of the date of dissolution." *Zern* v. *Zern*, supra, 296.

The defendant, in his brief, points to *Zern* in support of his claim that property should be valued as of the date of separation, noting that we stated that "[t]he extent to which the efforts of one spouse may have led

to an increase in value of property without any monetary or nonmonetary contribution by the other spouse after the parties' separation should be taken into account by the trial court in determining the division of property incident to a dissolution of marriage action." Id. In the sentence following that quoted by the defendant, however, we stated that this proposition "does not *require* deviation from the general rule that the parties' assets are to be valued as of the date of dissolution." (Emphasis added.) Id.

"In the absence of any exceptional intervening circumstances occurring in the meantime, [the] date of the granting of the divorce would be the proper time at which to determine the value of the estate of the parties upon which to base the division of property." (Internal quotation marks omitted.) *Sunbury* v. *Sunbury*, supra, 216 Conn. 676. The mere increase in value of property following the parties' separation does not rise to the level of exceptional intervening circumstances. Id. Accordingly, we hold that the trial court's decision to divide the assets of the parties on the basis of their value as of the date of the dissolution was clearly an exercise of lawful discretion, which this court will not disturb.

### III

The defendant next claims that the trial court improperly failed to take into account the effect of federal income taxes when it awarded the plaintiff one half of the assets owned by the parties as of the date of dissolution. The defendant contends that it would be necessary for him to sell substantial assets in order to obtain the amount of money necessary to satisfy the trial court's order, and that the capital gains taxes he would have to pay as a result of these sales would cause him to be left with only 40.8 percent of the resulting

total assets rather than the equal division of assets ordered by the court.

Subsequent to the entry of judgment by the trial court, the defendant filed with the court a motion for articulation. In that motion, the defendant sought, inter alia, guidance on the issue of whether the court's order would "allow the transfer of *assets in kind* having a present value of the amount the court ordered to be transferred" (emphasis in original) and, if the court would not permit the transfer of assets in kind, how an equal division of the marital estate could result in view of the "substantial capital gains taxes that will be incurred as a result of the liquidation of assets necessary to obtain the cash required."

In response to the defendant's motion, the trial court stated that its decision did not contemplate transferring assets in kind. The court went on to say that the defendant was free to choose the means by which he would comply with the court's order, noting the defendant's demonstrated ability to dispose of assets to meet his needs.

The defendant claims that the trial court improperly failed to consider the federal income tax consequences of the asset sales he would have to make to obtain the cash needed to make such a payment. There is no merit to this claim. Under our law, a trial court is not *required* to consider the federal tax consequences of its orders. We have held in several cases that "[t]here is no requirement in the applicable statutes which makes it mandatory that a trial court consider the federal tax implications of its financial orders." (Internal quotation marks omitted.) *Clement* v. *Clement*, 27 Conn. App. 364, 369, 606 A.2d 36 (1992); *Seaver* v. *Seaver*, 10 Conn. App. 134, 134, 521 A.2d 1053 (1987).

Although we have held that "[a] court *may* consider the tax consequences of its orders in dissolution

actions"; (emphasis added) *Damon* v. *Damon*, 23 Conn. App. 111, 114, 579 A.2d 124 (1990); and our Supreme Court has held such consideration to be proper; *Powers* v. *Powers*, 186 Conn. 8, 10, 438 A.2d 846 (1982); the cases have always used permissive rather than mandatory language with reference to a trial court's consideration of the tax consequences of its orders in dissolution actions. In *Hawkins* v. *Hawkins*, 11 Conn. App. 195, 197, 526 A.2d 872 (1987), as in the present case, the defendant claimed on appeal that the trial court "*should have considered* the tax consequences" of its orders. (Emphasis added.) There, we stated expressly that "neither statute nor case law requires that a trial court consider the federal tax implications of the financial awards." Id., 198. In view of the consistent holdings that a trial court's consideration of the tax consequences of its orders in dissolution actions is permitted but not required, the trial court's refusal to do so in this case was not an abuse of its discretion.

IV

The defendant's final claim is that the trial court improperly found the value of a building owned by the plaintiff to be $2,000,000. We are not persuaded.

We have already noted the appropriate standard of review for claims made on appeal in domestic relations cases. See part I of this opinion. Accordingly, in this case, we are called on to determine whether the trial court's valuation of the building in question at $2,000,000 was supported by the evidence. "The trial court has the discretion to accept whatever testimony and recognized appraisal methods it finds applicable . . . ." *Ellsworth* v. *Ellsworth*, 6 Conn. App. 617, 620, 506 A.2d 1080, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986).

In this case, the only testimony offered as to the value of the commercial building at issue was the defendant's

testimony that it was worth between $2,800,000 and $3,200,000 and that he would buy it for $3,000,000, and the plaintiff's valuation of the building at $1,000,000 on her financial affidavit. Neither party called any appraisers or other experts to testify as to a fair valuation of the building, although the trial court allowed the defendant to be qualified as an expert for this purpose. The court was thus provided with little evidence as a basis for valuing the building. The court selected a value of $2,000,000, a figure halfway between the two valuations offered to it by the parties.

Given the circumstances the trial court faced in determining the value of the commercial building in question, we cannot say that its valuation of $2,000,000 was clearly erroneous. Of the two pieces of evidence offered as to its value, one indicated a higher and one a lower valuation.

Our Supreme Court has held in a wide variety of situations, including dissolution cases, that the trial court is to be accorded wide discretion in determining the value of property. "[A] trial court, in valuing the parties' assets upon dissolution, has considerable discretion in selecting and applying an appropriate valuation method. In assessing the value of . . . property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method of determining valuation. . . . The trial court has the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable; his determination is reviewable *only* if he misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was his duty to regard." (Emphasis added; internal quotation marks

omitted.) *Krafick* v. *Krafick*, 234 Conn. 783, 799–800, 663 A.2d 365 (1995).

Similarly, in cases in which a trial court's valuation of property for property tax purposes is challenged, our Supreme Court has held that "[a] trial court is vested with broad discretion in municipal tax appeals to determine true and actual value, and has the right to accept so much of the expert testimony and the recognized appraisal methods which are employed as it finds applicable. . . . The exercise of this right would be reviewable only if it were apparent that the [trial court] misapplied or overlooked, or gave a wrong or improper effect to, any testimony or consideration which it [has a] duty to regard. . . . The function of the court below was to determine the true and actual value of the . . . property." (Citations omitted; internal quotation marks omitted.) *First Bethel Associates* v. *Bethel*, 231 Conn. 731, 741, 651 A.2d 1279 (1995).

In view of the foregoing precedent and the lack of expert testimony as to the valuation of the property, we cannot say that the trial court's conclusion as to the value was clearly erroneous or that the trial court misapplied or overlooked any test or consideration that was before it concerning the value of the property. See *Krafick* v. *Krafick*, supra, 234 Conn. 799–800. Indeed, the trial court obviously gave equal consideration to both of the valuations offered to it, adopting a figure lying between those two figures as the value of the building. We cannot say that the trial court's decision was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.