[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: INTERPRETATION OF TRIAL COURT JUDGMENT
This matter comes before the court for an interpretation of the underlying trial court judgment. The case comes with a tattered and soiled history having been the subject of never ending "warfare" at both the trial and appellate levels of our court system.
The court order at issue, upon clarification, articulation and correction by Judge Coppeto, provides in pertinent part as follows:
 "SECURITIES: The court only considered the gross value of the securities involved. No tax information was offered as to basis, capital gain or any carryover loss. The word `sum' was incorrectly used by the Court. It was the Court's intention to transfer to the Defendant securities with a value of $190,264 on the date of transfer. To do otherwise would destroy the mosaic the Court fashioned in determining the split of securities."
On appeal, the defendant argued that:
 "[t]he trial court erred in its choice of an effective date for the division of the plaintiff's securities. He argued that `the date of transfer' specified in the second memorandum . . . was a date in the indefinite future subject to the expiration of all appellate stays and thereafter to the plaintiff's compliance with that order, and is necessarily a date on which the value of the parties' assets is yet to be known. As a result, it is not reasonably possible for this award to have been based on the parties' current financial circumstances, and it must be reversed." CT Page 10616
The defendant also argued that arithmetically the value of $190,264 represented a 3 to 2 or 60/40 split of the securities in favor of the plaintiff because the court valued the securities to be worth approximately $475,662 as of May 15, 1997. The court, Coppeo, J., however, did not indicate a percentage but only a final value amount. Additionally, the trial court did not indicate how many shares of stock were to be transferred and only indicated the value or worth of the stock to be transferred.[1]
The Appellate Court concluded:
 "that the trial court did not change the value of the property to be transferred to the defendant. The court clarified the ambiguity in its first memorandum by explaining that, as of the date of the dissolution, the defendant was entitled to securities worth $190,264. Moreover, the defendant does not claim that he is entitled to more by virtue of the original order than by way of the clarified order. He also fails to demonstrate how he is harmed by the second order. His claim that the plaintiff may put off the transfer indefinitely is pure speculation and ignores the remedy of contempt that would be available to him if the plaintiff failed to obey the court's order."
(Emphasis added.) Benedetto v. Benedetto, 55 Conn. App. 350,357, 738 A.2d 735 (1999), cert. denied, 252 Conn. 917,744 A.2d 437 (2000).
The defendant now asserts that he is entitled to more than $190,264 because the value of the stock at issue on today's market is greater than it was on the date of dissolution. He also claims that the order was automatically stayed pending appeal and could not be enforced until the Supreme Court denied his petition for certification of the Appellate Court's decision on January 19, 2000. In other words, he is seeking the benefit of his own bargain in that he is the one who filed the appeal causing a delay in the transfer of the stock to the present time.
"[O]nce the marital property is divided, the court has fulfilled its responsibility, and, therefore, continuing jurisdiction over divided marital property does not further the goal of the statutes. Similarly, an attempt to divide expected property is outside the scope of the statutes because it does not divide the property that the parties' possessed during their marriage. Smith v. Smith, 249 Conn. 265, 275, ___ A.2d ___ (1999).
"The division of property in a dissolution proceeding is governed by CT Page 10617 § 46b-81, which provides in relevant part: `At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . .' The only time mentioned in this statute as controlling the entry of financial orders is the `time of entering a decree.' It is therefore not unreasonable to conclude that this date was intended by the legislature to be used in determining the value of the marital assets assigned by the trial court to the parties. Sunbury v. Sunbury, 216 Conn. 673, 676,583 A.2d 636 (1990)." Rolla v. Rolla, 48 Conn. App. 732, 744, 712 A.2d 440
(1998).
"Although § 46b-81 (a) employs very broad language in providing for the distribution of property in a dissolution proceeding and grants the court authority to `assign to either the husband or wife all or any part of the estate of the other', this court previously has determined that `[§] 46b-81 (a) involves the assignment of marital assets.' (Emphasis in original.) Sunbury v. Sunbury, 216 Conn. 673, 676, 583 A.2d 636
(1990). After the judgment of dissolution in Sunbury, the case was remanded for redetermination of the financial orders because the trial court had calculated the defendant husband's income incorrectly. The plaintiff wife appealed the new orders, arguing that the trial court should have valued the parties' assets, and that `[t]o the extent that the plaintiff seeks consideration of a post decree appreciation in the value of property, such appreciation, having occurred after the termination of the marriage, is no longer a marital asset.' Id. 676."Bornemann v. Bornemann, 245 Conn. 508, 521, ___ A.2d ___ (1998).
In seeking the transfer of stock at the value at the time of dissolution the defendant essentially seeks the appreciation. Pursuant to the holding in Bornemann, the defendant in the present case is entitled to stock valued at $190,294 at the time of transfer, which he argues is the date of dissolution. Such a result would give the defendant the appreciated value of the stock which he is not entitled to under the holding in Bornemann.
Judge Coppeto set forth the intention of the court in fashioning the order regarding securities in the articulated, clarified and correct order by stating: "It was the Court's intention to transfer to the Defendant securities with a value of $190,264 on the date of transfer. To do otherwise would destroy the mosaic the Court fashioned in determining the split of securities." One possible interpretation of the language "on the date of transfer" is that it would ensure that the defendant wouldnot receive the appreciated value of the securities if the date of transfer was delayed. Judge Coppeto's statement that the order would not be automatically stayed if an appeal was filed by either party further supports a construction of the intent of the order, that being to keep CT Page 10618 the mosaic intact. While it is true that the order could have been more specific,[2] it is decided that allowing the defendant to benefit by giving him the same number of stock today that he would have received upon entry of the order instead of giving him securities amounting to a value of $190,264 would destroy the carefully crafted mosaic; a mosaic which obviously considered all the shares with wisdom.
DANIEL E. BRENNAN, JR., JUDGE