[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on November 24, 1974, about twenty-six and one-half years, and have been separated four years before the plaintiff (husband) filed his complaint on September 27, 1999. There are no minor children issue of this marriage, but they have a daughter, Meredith Ann Rizzardi, who is now twenty-five years old. Both parties have resided in this state for over thirty years. The defendant wife was personally served, therefore, the court has personal jurisdiction of the parties and this marriage. The husband alleged the marriage has broken down irretrievably. Neither of them has received any public assistance.
The parties gave contradictory testimony on the issue of fault for the breakdown. The wife testified that the husband abused her physically on two occasions which he denied. She was emotionally devastated after he admitted having several extramarital affairs during the marriage. The husband testified he ceased having sexual relations with her four years after the marriage. He lost all attraction for her after she became extremely obese. As in most marriages, both parties contributed to the breakdown, however, the husband's behavior contributed more. Therefore, the court finds him primarily at fault. The marriage is dissolved on the ground of irretrievable breakdown pursuant to § 46b-40 (c)(1) of the Connecticut General Statutes.
Both parties worked full-time during the marriage. The wife has been employed as a music teacher by the Danbury Board of Education for the past thirty-two years, and is currently earning an annual gross salary of $64,000. She is fifty-three years old and plans to retire in three years. Her pension has vested and believes she will receive about $3500 per month, or $42,000 annually.
The husband is a licensed plumber, a licensed plumbing contractor, and is fifty-four years old. In 1977, he incorporated as David J. Rizzardi Co., Inc. with one hundred shares issued, fifty-one shares to him, and forty-nine shares to his wife. For the first seven years, he ran the plumbing business alone, and for the past fifteen years has one key employee, Joseph Averna, and the two of them have been operating the business. This business has been successful and has accumulated substantial assets. His exhibit listed total assets of $280,000, with liabilities of $226,400, for a net worth of $53,600. (See Plaintiff's Exhibit 6.) The husband testified the business could be worth up to $150,000. His attorney argued that only a person with similar plumbing skills and experience as the plaintiff would be interested in buying the CT Page 6650 business; therefore, she valued the equipment, minus the liabilities, for a total net worth of $53,600.
In the 1998 corporate tax returns, the gross receipts were $536,723, minus the cost of goods of $253,738 and other deductions of $288,569 and special deductions of $4999, leaving no tax due. (Plaintiff's Exhibit 1.) In the 1999 tax return, his gross receipts were $438,956, less allowances of $11,897, and the costs of goods were $472,059, for a gross profit of $264,278. The business deductions were $289,428 for a net loss of $17,953. (Plaintiff's Exhibit 2.) Some of his personal expenses for two Harley Davidson motorcycles, the 1989 Mercedes, and the Cadillac Eldorado, insurance, repairs, and other personal expenses, were paid by the corporation.
The wife's expert witness, Edward P. Burger, a certified public accountant, with twenty years of experience, valued this business at $365,000. (Defendant's Exhibit F.) During his career, he has evaluated about twelve similar businesses.
After considering all the evidence, and that this business has a limited market of buyers, the court finds the fair market value to be $150,000.
A month before he started this divorce, the husband transferred forty-nine shares of the stock to his key employee, Joseph Averna. He paid nothing for the stock, filed no gift tax return, and never listed it on his federal income tax return. In his deposition of April 10, 2001, he admitted not knowing the net worth of the business, nor was he given a statement of net worth of the business, where the stock was, or of the value of the inventory, and his $800 weekly salary remained the same. He did not know how much money the husband was taking from the business.
The evidence was clear and convincing that this attempt to transfer the stock to Mr. Averna was a fraudulent conveyance, made to deprive the wife of this marital asset; the court, therefore, sets it aside. Gaudio v.Gaudio, 23 Conn. App. 287, 302 (1990).
The parties jointly own six parcels of real estate and a 50 percent interest in a seventh parcel. The husband owns four building lots in Florida that he purchased before the marriage.
The parties agreed and stipulated on the net equity of four out of the seven real estate parcels and agreed on the value of the four lots in Florida all as shown on their Proposed Division of Assets and in their financial affidavits. CT Page 6651
They disagree on the value of the following three parcels:
1. The marital residence and barn at 12 The Old Road in Newtown, Connecticut. The wife lists the net equity at $96,700, and the husband at $112,000. The court finds the net equity to be $112,000 for this parcel.
2. The house the wife has live in for the past four years at 24 Taunton Lake Drive, Newtown, Connecticut. The wife lists the equity at $190,000, and the husband at $252,000. The court has divided the difference in half, and from their affidavits and testimony, finds the equity to be $221,000.
3. The parcel known as 139 Mt. Pleasant Drive, the wife showed a value of $116,000, and the husband at $125,000 on their financial affidavits. The court has divided the difference in half, and from their affidavits and testimony, finds the net equity to be $120,500.
They agree on the value of the other assets listed in their financial affidavits and on the Division of Assets attached hereto.
The criteria for the division of marital assets is found in § 46b-81
of the Connecticut General Statutes, which provides in pertinent part:
 [A] trial court may assign to either the husband or wife all or any part of the estate of the other. . . . In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.
Krafick v. Krafick, 234 Conn. 783, 792 (195). (Emphasis in original; internal quotation marks omitted.)
The court is also required to value the real estate and other marital assets at current market value at the time of dissolution. Rolla v.Rolla, 48 Conn. App. 732, 748 (1998). It also should consider the non-monetary contributions made by the wife as a mother and homemaker in CT Page 6652 dividing the marital assets. O'Neill v. O'Neill, 13 App. 300, 311 (1988).
In Krafick v. Krafick, supra, 234 Conn. 794, 796, our Supreme Court held that a Connecticut teacher's pension is a valuable marital asset distributable under § 46b-81 of the Connecticut General Statutes. The wife has taught in the Danbury school system for about thirty-two years and plans to work three more years to qualify for a maximum benefit. She believes her annual pension benefit will be about $42,000 annually or $3500 a month. The parties agreed that this pension benefit would require an investment of $562,872 to receive this annual benefit. The court has used the present value method in arriving at a value of $562,8872 for this pension.
The court has considered all of the criteria in § 46b-81 of the Connecticut General Statutes — the testimony of the parties and the expert witness, the exhibits entered into evidence, and their respective financial affidavits, in arriving at the orders shown on the attached Division of Assets, and the following additional orders are also entered:
A. PERIODIC ALIMONY
1. The parties stipulated that no periodic alimony would be paid to either party. The wife's life time teacher's retirement pension of $42,000 annually and the award of the other assets to her are sufficient for the wife to live comfortably. The husband's plumbing business and the income from his rental property should produce sufficient income for him to also live comfortably, and the court has considered the assets awarded to him.
B. PERSONAL PROPERTY
1. The division of a limited number of personal property items remain unresolved. The matter is referred to Family Services for mediation, and failing to settle, the court retains jurisdiction.
2. The wife will retain ownership of her automobile shown to be worth $3000 on her financial affidavit, and she shall be responsible for the loan, insurance, and all other expenses. She will hold the husband harmless from any liability regarding the car loan.
3. The wife will retain ownership of the jewelry now in her possession valued at $5000, except that she will return to the husband the Rolex watch and the diamond ring, if she has them in her possession. CT Page 6653
4. The husband will retain the Franklin Mint shares valued at $3019, and the cash value of $20,000 in the life insurance policy as shown on his financial affidavit.
5. The wife shall relinquish any and all ownership in the forty-nine shares she has in the David Rizzardi Company, Inc. to the husband for $75,000. He shall sign and deliver a note for $75,000 secured by a mortgage for said amount on the property located at 12 The Old Road, Newtown, Connecticut, payable annually, within the next five years, in equal installments of $15,000, together with interest of 6 percent per annum on the unpaid balance. The first $15,000 installment shall be due on July 1, 2001, and he may prepay this note at any time without penalty. The attorney for the wife shall prepare said note and mortgage.
C. COUNSEL FEES
1. Each party will pay his or her own attorney's fees.
D. MEDICAL INSURANCE
1. The husband is currently covered under the wife's medical insurance with CIGNA. He shall, if he chooses, avail himself of the benefits under COBRA.
E. DIVISION OF LIABILITIES
1. Each party will be responsible on his or her debts shown on their financial affidavits. (His debts are $23,500 and her debts are $67,464.65.)
F. RETIREMENT ASSETS
1. The husband shall retain sole ownership of the stock with Prudential listed on his affidavit at $206,000 and his IRA of $22,200.
2. The wife shall retain sole ownership of her pension through the State of Connecticut valued at $562,872.
G. LIFE INSURANCE
1. The husband is to provide a life insurance policy of $100,000 until the $75,000 note and mortgage is paid in full.
Romeo G. Petroni, Judge Trial Referee
DIVISION OF ASSETS Husband Wife Total Value
CT Page 6654 Wife CT State Retirement $0.00 $562,872.00 $562,872.00
Husband's Prudential Accounts $228,200.00 $0.00 $228,200.00 and IRA Account
Wife's Prudential IRA $0.00 $43,070.00 $43,070.00
12 Old Road $112,000.00 $0.00 $112,000.00
24 Taunton Lake Drive $0.00 $221,000.00 $221,000.00
139 Mt. Pleasant Road $120,500.00 $0.00 $120,500.00
76 Jeremiah Road (50%) $43,000.00 $0.00 $43,000.00
9 White Birch $35,000.00 $0.00 $35,000.00
24 Old Route 7 $44,000.00 $0.00 $44,000.00
31 Old Route 7 $44,000.00 $0.00 $44,000.00
4 Lots Pt., Charlotte, FL $4,000.00 $0.00 $4,000.00
Parties' Savings Accounts $5,945.00 $5,945.00 $11,890.00
Franklin Mint $3,019.00 $0.00 $3,019.00
Wife's Car $0.00 $3,000.00 $3,000.00
Wife's Jewelry $0.00 $5,000.00 $5,000.00
Cash Value Life Insurance $20,000.00 $0.00 $20,000.00
David Rizzardi Co., Inc. $75,000.00 $75,000.00 $150,000.00 (transfer of 49 shares by wife to husband)
TOTAL VALUE $734,664.00 $915,887.00 $1,650,551.00