[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on May 22, 1982, about nineteen years ago, in Waterbury, Connecticut. There are two minor children issue of this marriage, Lidia M. Varrone, born November 24, 1984, now sixteen years old, and Michael A. Varrone, born June 6, 1994, now almost seven years old. No other children have been born to the wife since the date of the marriage. The plaintiff has resided in Connecticut continuously for twelve months prior to filing the complaint. The marriage has broken down irretrievably without any reasonable prospect for reconciliation. Neither party nor their children have been recipients of public assistance.
Both parties testified at length on the causes for the marital CT Page 7887 breakdown. Both parties were born in Italy and emigrated to Waterbury before they were married. The marriage was arranged by their parents when the wife was eighteen years old, and the husband was twenty-seven. At the beginning she was lonesome for her family who were living in Italy, and he did not enjoy living in the United States.
The husband worked at various factory jobs during the marriage and is now working as a shipping clerk for Somers Thin Strip Brass Group receiving a gross weekly wage of $705 to which should be added $142.31 from two savings plans, for a total gross weekly wage of $847.31. His net deductions are listed at $148.47, leaving him a net weekly income of $698.84. The husband had always earned more than the wife during the marriage.
The wife has been working as a cook at Southbury Training School with a net weekly income of $372.14. The wife's earnings now are more than any of the other jobs she previously held. However, they have both worked throughout the marriage.
The court has considered the testimony of both parties and believed the wife's testimony that she was a good wife, which the husband admitted. For many years, the wife turned over her weekly paycheck to him, and he would pay their bills. The husband was controlling in many respects and seemed always aggravated. The wife would have to get the husband's permission to make any purchases. He spent little time with their two children and would play poker at least four times a week and never accounted for his winnings or losses. He objected to sending any gifts to her family in Italy. He refused to buy her a mattress for over fifteen years knowing she had problems with her back. On the other hand, the husband admitted she was a wonderful mother and homemaker. He went to marriage counseling for a short time in February 2001, in a last effort to save the marriage, but he was unsuccessful.
The court finds the husband to have emotionally abused the wife for many years during the marriage. While in most cases, the parties both contribute to the breakdown, in this case, the wife's testimony was clear and convincing that the husband was the primary cause of the breakdown. The court will consider this finding, along with all the other criteria set forth in §§ 46b-81 and 46-82 of the Connecticut General Statutes in dividing the assets and in determining any alimony orders.
The marriage is dissolved on the grounds of irretrievable breakdown pursuant to § 46b-40(C)(1) of the Connecticut General Statutes.
The parties signed an agreement dated March 27, 2001, in which they stipulated as to custody, visitation, and child support for the two minor CT Page 7888 children. The court accepted the agreement and awarded child support of $177 per week in accordance with the Connecticut Child Support Guidelines and incorporates this agreement into the judgment.
The wife shall carry health and dental insurance for the minor children available through her employer, and they shall pay the unreimbursed medical expenses in accordance with the Guidelines.
In a contract dated February 22, 1990, the parties agreed to purchase the husband's mother's residence at 379 Scott Road in Waterbury, Connecticut for $76,000, one-half of its fair market value (see Defendant's Exhibit 4) with two conditions: (1) The parties agreed to build a separate apartment for her for $7,000, and signed a lease giving her the right to remain in the apartment for life at $1.00 a year; (2) The parties signed two promissory notes dated May 4, 1990 for $11,500 each to the husband's sisters, Filomena Romano and Luisa Setaro. Although counsel for the husband did not produce the original or copies of the signed notes, the wife admitted and agreed they owed these notes. The closing of title took place at the Office of Attorney Mark D. Capuano on May 4, 1990, when all the closing documents were signed with their families present.
In dispute is whether the defendant's mother has a life estate-lease interest with a present market value, an equitable claim since the lease life estate was not recorded. The mother is now seventy years old, with a life estate-lease interest in the apartment for $1.00 a year. The parties agreed the property is presently worth $149,900, which was confirmed in an appraisal by Frank Melchiore, dated December 27, 2000. (Plaintiff's Exhibit 3). All assets must be appraised at fair market value at the time of dissolution. Rolla v. Rolla, 48 Conn. App. 732 (1998). The husband's expert witness, Edward Sodolosky, a certified public accountant with sixteen years experience, testified the lease-life estate actuarially had a present value of $49,048 for a seventy year old woman with a life expectancy of 14.1 years assuming a present market value of the property to be $149,900. The court found his testimony credible and probative and accepts his opinion that the present value of this 70 year old mother's lease-life estate to be $49,048.
Prior to the hearing, the wife's attorney filed a motion in limine. In her brief, and in argument, she stated that the value of lease-life estate to the mother for $1.00 a year could not be considered because it would be a contribution made by a third party, therefore, was inadmissible. Osborne v. Osborne, 2 Conn. App. 634 (1984). The court did not find this argument persuasive. The court finds the mother's lease-life estate interest has a value of $49,048, and the $23,000 debt in notes to the husband's sisters are all equitable claims enforceable CT Page 7889 between these parties.
The court orders the attorney for the defendant to record second mortgage to the plaintiff (wife), the contract of sale and the original promissory notes signed by these parties on February 22, 1990, and May 4, 1990 in the Waterbury Land Records after the husband refinances the present first mortgage.
The court has considered all the testimony of the witnesses, the financial affidavits of the parties, the exhibits introduced in evidence, and the criteria in § 46b-81 and § 46b-82 of the Connecticut General Statutes in arriving at the following orders.
 1. The wife shall quitclaim her one-half interest in the marital home to the husband, and the court orders him to pay her $21,926, for her one-half interest in the marital home.
 Present value of Marital Home $ 149,900 Mortgage to Webster Bank $ 34,000
 Unrecorded Notes to husband's $ 23,000 2 sisters
 Mother's Life Use $ 49,048
$106,048 - 106.048
$ 43,852
Wife's 1/2 interest in the marital home $ 21,926
The husband shall hold the wife harmless on the two
promissory notes to his sisters totaling $23.000.
The husband shall pay her within 30 days from dissolution $1,926 by cashier or certified check. The balance of $20,000 shall be by way of a promissory note and second mortgage to the wife, payable in five annual installments of $4,000 each, beginning January 1, 2002. The note and mortgage shall be prepared by the attorney for the wife and shall bear interest at 6% per annum. Said note may be prepaid at any time without penalty. The mortgage shall be recorded after the first mortgage in the Waterbury Land Records. The wife shall hold the husband harmless for any and all liabilities associated with the marital home.
2. a. Value of Olin Stock (Husband) $26,612.10 b. Webster Joint Checking Acct. 5,700.00 CT Page 7890 c. Credit Union Acct. (Husband) 1,100.00 d. 401K (Husband) 7,500.00
Total Assets $40,912.00
These assets are to be divided equally between the parties.
3. The 1991 GMC Jimmy in the name of both parties will be transferred to the wife. The husband is to retain his 1987 Honda.
4. Each party to retain their own IRA accounts.
5. Children's savings bonds totaling $4,000 will remain the property of the children.
6. Husband to retain all personal property in his possession.
7. The husband will pay the wife periodic alimony of $50 per week until the death of either party, the wife's remarriage or her statutory co-habitation pursuant to § 46b-86 (b) of the Connecticut General Statutes or until the seven year old minor child, Michael A. Varrone, reaches his majority, whichever first occurs. The $50 weekly alimony award and the weekly child support award of $177, a total of $252, shall be subject to an immediate wage withholding order. The court finds the wife was primarily responsible in caring for the home as well as the children throughout this marriage.
8. Income Tax Returns: The parties shall each claim one child on the annual State and Federal Income Tax Returns until such time as Lidia is no longer eligible as an exemption at which time the parties shall alternate Michael as an exemption.
9. Legal Fees: Both parties shall each be responsible for their respective legal fees.
10. Each party is responsible for the debts listed on their financial affidavits and agree to hold the other harmless.
PETRONI, JTR.