[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Honolulu, Hawaii on December 27, 1971. During their thirty plus year marriage four children were born to the defendant ("wife"), one of whom, Thurston James Powers, born December 11, 1988, is still a minor. He lives with the wife at the marital home at 15 Hendrie Avenue in the Riverside Section of Greenwich, Connecticut. Their son Matthew, who is a college student, also uses the home during summer and other school breaks. The parties have been separated since September 2000, and the plaintiff ("husband") lives in a rental condominium, also in Greenwich. The case was tried to the court over three days (February 6 through February 8). Additional evidence as to the husband's bonus was introduced to the court at a later date, and counsel for both parties appeared later to argue the husband's motion regarding the possible adverse tax consequences relating to the sale of the real estate. Subsequent thereto, on July 9, 2002, the marriage of the parties was dissolved by decree of this court, at which time, the court approved and incorporated a Stipulation of even date therewith in the decree, and reserved judgment as to the entry of an order for alimony and support and other matters not covered by said Stipulation. In addition, by agreement, the Stipulation dated June 23, 2001 (#114) which is on file with the court, was found to be in the best interest of the minor child and also incorporated it in the decree by reference.
The husband is 56 years of age and is president of the Personal Products Division of Playtex Products. Currently he has a base salary of $301,000, and in addition to which he is entitled to a bonus and other benefits including profit sharing, deferred compensation, a leased car, stock options, as well as medical and dental insurance. Although the bonus is geared to performance, he has consistently received substantial bonuses, $140,000 in 1999, $155,000 in 2000, and $120,000 in 2001. The husband provides life insurance for himself as well as the eligible children. The husband describes his health as excellent. He is well educated, earning a Bachelor's Degree from Bates and an MBA from Cornell. He has held a succession of positions and has steadily advances achieving his present position in 1996.
The wife is 51 years old and in apparent good health. She too is well educated having a Bachelor's Degree in Education as well as a Master's in Education from Columbia University. The wife worked outside the home in the early days of the marriage until the birth of their oldest child in CT Page 9312 1976. From that point until she was elected a State Legislator from her home district in Greenwich in 1992, she devoted herself to the family as a full-time homemaker and to the advancement of her husband's career. Since 1992 she has steadily advanced in the ranks in Hartford and has assumed leadership roles. She takes her elected position seriously and devotes a substantial amount of time both while the Legislature is in session and while it is out of session. Her annual salary including travel and expenses is approximately $44,000 per year. She has an IRA and will be eligible for a modest pension from the state at age 65.
The principal asset of the parties is the marital home in Greenwich which they purchased in 1983. Since that time they have had four major renovations and a minor one. There is a $162,000 balance of the first mortgage and a home equity line in place of $150,000. Each party has a different idea of the home's value and both offered conflicting appraisal testimony. The husband feels the house is worth $1.475 million while the wife feels it is worth only $1.225 million. The husband seeks to have the house sold when their son graduates from middle school. On the other hand, the wife described the son as having emotional problems stemming in part from the divorce. He is in counseling and does not accept change very readily. Accordingly, she asked that the court award her the entire home, or, in the alternative, that the home be sold when the minor child graduates from high school. The husband countered by indicating that it is possible that the youngest son like his older brothers may very well not be going to high school in Greenwich. The wife testified that if she leaves the district she can no longer represent the district in the Legislature. In addition, the parties have a condominium in Vermont worth between $145,000 to $160,000 with a $92,000 mortgage. The house was originally purchased because the three oldest children competed actively in ski racing. In fact, some of them attended high school in the Stratton, Vermont area during the intensive training necessary for that activity.
The principal retirement assets are those accumulated by the parties through the husband's employment. There is a pension through General Foods as well as a qualified and a non-qualified plan through his present employer. There are, in addition, a less substantial number of vested and unvested stock options. The husband contends that some of the options acquired late in the marriage, should belong to him.
During their testimony, each of the parties divided the marriage by decades. During the first 10 years, both agree that the marriage was a traditional marriage, and that the parties did things as a family and were mutually supportive. However, in the summer of 1981, the husband announced that he was in love with another woman, that he did not wish to be tied down, and that he wanted a divorce. The wife testified that she CT Page 9313 was "shattered" by the husband's announcement. The parties went to counseling for seven months, and their son Matthew was born. Accordingly, they decided to stay together. During the next 10 years, both described the marriage as having no significant problems, and that they had no major disputes. The husband was very busy working on his career and felt that they had a fine relationship. It was during this time that the husband discovered that he had high cholesterol. The wife encouraged the husband to deal with this problem. He has since taken Lipitor which has helped. In 1992 the wife was first elected to the Legislature. It is to this event that the husband attributes the breakdown of the marriage. He testified that the wife was increasingly absent from the home during political activities and that he himself assumed some of the homemaker roles with regard to the children. He complained that the parties were taking fewer and fewer trips together as a family, and that the wife virtually stopped accompanying him on his business trips. The wife testified that the husband constantly complained about her weight, the fact that she was too busy, and that she was "not aging-well." He confessed to a "one night affair" on a business trip in 1998, however, of more significance, he commenced his present relationship in March 2000. He testified that the parties ceased a physical relationship in 1999. At that time he felt that the marriage was over, and that he was angry and hurt about it. In fact, the court was left with the distinct impression that he was unable to accept the fact his wife had begun a new career after fifteen years of marriage, and, moreover, he was unable or willing to fully adjust to the new reality. He struck the court as rigid, dogmatic, and somewhat autocratic — fine qualities in a Naval officer or a C.E.O. — but without the ability to be flexible or to see things "from the other fellow's perspective." In addition, throughout his testimony, the husband repeatedly stated that the wife constantly "undermined his position as head of the household" (paterfamilias) with the children. He referred to "discipline, values, and intellectual integrity." The court finds his repeated refrain about values and integrity to ring somewhat hollow under the circumstances.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-84, and46b-215a, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That the marriage of the parties was dissolved by decree of this court on July 9, 2002.
2. That the marriage of the parties has broken down irretrievably, and CT Page 9314 that ample evidence exists that both parties have contributed in some measure to said breakdown. However, the court finds that the husband's lack of marital fidelity and his inability to adjust to the changing dynamic of his marriage, in particular the wife's pursuit of her career, to be the most significant factors in the breakdown.
3. That the parties entered into a Stipulation dated June 23, 2001, entitled "Stipulation Re Final Orders on Custody and Visitation," which the court found to be in the best interest of the minor child and was made an order of this court on June 29, 2001 and incorporated by reference in said decree.
4. That the parties entered into a Stipulation dated July 9, 2002, dividing their marital property and resolving other disputes, which the court found to be fair and equitable under all of the circumstances, ordered made part of the court file, and incorporated by reference in said decree.
5. That at the time of the entry of the decree, the court reserved jurisdiction to determine the amount and duration of alimony and child support.
6. That from the date of the marriage to and including the filing of the Complaint, the wife has made significant monetary and non-monetary contributions to the marriage, including inter alia the maintenance of the family home, the rearing of four minor children, the advancement of her husband's career, and the contribution of her earnings prior to the birth of their first child and subsequent to her reentry into the workforce.
7. That the combined net weekly income of the parties is in excess of the maximum Child Support Guidelines amount; that presumptive minimum basic child support is $383.00 per week; and that the husband's share is $328.00 per week; and that the Court finds that it is appropriate and equitable to apply the deviation criteria set forth in Section 46b-215a-3
(b)(5) of the Child Support and Arrearage Guidelines Regulations on the basis of the coordination of total family support.
8. That the court may, but is not obligated to take into consideration the federal tax consequences of its financial award. Rolla v. Rolla,48 Conn. App. 732, 745-747 (1998).
9. That in arriving the following orders, the court has found the following factors significant: the ages of the parties; the disparity in the respective earning capacities of the parties; the likelihood that the husband will be able to accumulate a larger estate than the wife in the CT Page 9315 future; the contributions of the wife to the maintenance and preservation of the marital assets; the length of the marriage; the causes of the breakdown; and the division of assets as set forth in the Stipulation of the parties dated July 9, 2002.
 ORDER
IT IS HEREBY ORDERED THAT:
1. Commencing August 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $6,500.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or July 31, 2007, whichever shall sooner occur. Thereafter, the husband shall pay to the wife the sum of $7,500.00 per month as and for periodic alimony, until the death of either party, or the remarriage of the wife whichever shall sooner occur.
In addition, commencing August 1, 2002, for so long as he has an outstanding alimony obligation to the wife, within two (2) weeks after receipt by the husband of any bonus or other additional cash compensation from his employment (not including any increase in his base salary), the husband shall pay to the wife 30% of any such gross bonus or cash compensation up to and including $250,000, and 15% of the next $250,000 in any calendar year, as and for periodic alimony, until the death of either party, or the remarriage of the wife whichever shall sooner occur. The husband shall provide satisfactory evidence to the wife of this bonus or additional cash compensation at the same time that he makes payment pursuant hereto.
2. Commencing June 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $2,000.00 as and for basic child support for the minor child. In the event that the child is still in high school upon reaching his eighteenth birthday, then in that event, any child support order shall continue until the child reaches the age of nineteen years or the first day of the first month following his graduation from high school, whichever shall sooner occur pursuant to General Statutes §46b-84 (b).
3. The remaining personal property shall be divided as follows:
A. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same. Specifically, the husband shall transfer to the wife title to the 1998 Audi pursuant to the terms of the Stipulation dated July 9, 2002. CT Page 9316
B. The husband shall be entitled to the balance of his security deposit free and clear of any claims by the wife.
4. The court hereby retains jurisdiction with regard to the preparation and filing of any Domestic Relations Orders and Qualified Domestic Relations Orders necessary to effectuate the transfer of any retirement assets as set forth in the Stipulation dated July 9, 2002.
5. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. The husband shall be responsible for the overdraft, if any, in the joint Putnam Trust checking account per the Stipulation dated July 9, 2002.
6. The wife shall be entitled to claim the personal exemption for the minor child commencing with the tax year 2002 and thereafter.
7. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
THE COURT
SHAY, J.