[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married in Fresh Meadow, New York on June 26, 1988. Two minor children have been born to the wife, to wit, Nicole, born April 4, 1991 and Allison, born March 29, 1995. Both parties have been separated since approximately March 1, 1991, and the minor children reside with the plaintiff wife ("wife"), in the marital home 21 Fillow Street in Westport. In her mother's words, Allison has "learning issues." They initially separated for about six months staffing in September 1999, and were finally separated in January 2001.
The husband is 41 years old and in apparent good health. He earned an MBA in finance from New York University. Currently he is a self-employed technology consultant in a firm which he formed in July of 2000, called SoLogical Solutions, LLC. The principal source of his income is a contract MBIA, Inc. which calls for payment of $125 per hour for a forty-hour week. The most recent contract period ran from January 1, 2002 through June 30, 2002. He has a gross income of approximately $208,000 from which he nets $100,000. He was employed as a computer consultant with Deloitte Touche at the time of the marriage, and thereafter, during the course of the marriage, held a succession of jobs from that of a systems consultant and to a position in human resources, with steady increases in salary.
The wife is also 41 years old and in good health. She is currently a real estate broker. She testified that to the date of the hearing (April 2002) she had earned no commissions from her work. However, she did earn an average of more than $81,000 in gross commissions during the years 1998 through 2001 and an average net income after business deductions of approximately $47,000 for the period 1998 through 2000. She has a Master's Degree in Taxation and is a Certified Public Accountant. In fact, she was CT Page 10488 working at that occupation until the birth of the first child. She continued to prepare tax returns, including the family joint return, on a limited basis up to the tax year 2000. According to the testimony, the joint 2000 tax return was filed late, in January 2002. The parties had a dispute regarding the preparation and filing of a joint 2001 return, which the husband had hired another accountant to prepare, and with which he claims the wife continued to find fault in one or more aspects.
The parties' principal assets include the marital home in Westport which they purchased in July 1993, for $296,000. They put down the sum of $60,000. The wife testified that the source for the down payment came from the proceeds of the sale of her condominium which she owned at the time of the marriage. These funds were deposited in an Evergreen Fund and later used for the purchase. The husband disputes that the entire deposit came from the wife. He testified that he brought $10,000 to the marriage, but the court heard no credible testimony tracing this sum. It finds the wife's version to be more credible. They have valued the property anywhere from $425,000 to $500,000. The home has a first mortgage in the amount of $212,000 and a home equity line of $131,000 for a total indebtedness of $342,000. During their ownership, they made numerous improvements to the property, including a screened porch, upgraded bathrooms, and painting. In addition, there is a modest stock portfolio with some stocks in sole names and others held jointly. Thirdly, they have retirement assets, principally in the form of IRA's. The husband has approximately $109,000 in his name, while the wife has approximately $67,000 in her name. As to the latter, while the case was pending, in September 2001, the wife used approximately $11,000 in marital funds to contribute to one of her IRAs without consulting the husband. The husband drives a leased Nissan, while the wife owns a 2002 Mercedes, which she purchased during the pendency of the case for $56,000 (exclusive of financing costs) using approximately $10,000 of marital funds as a down payment. She has indicated that the current value is $42,000, however, against this is a car loan in the amount of $40,000. The parties maintain modest debt, with the exception of actual and estimated federal income taxes for the years 2001 and 2002.
The wife testified that the marriage broke down as a result of the husband's hypercritical behavior toward her, as well as his more physical methods of child discipline. She remained in the marriage because she "hoped things would get better." For his part, the husband claims that the wife's anger, which resulted in frequent arguments, often in front of the children, was the principal cause. He also felt that the wife involved the children in the dissolution proceedings in an inappropriate manner. As an example, he stated that she wants him to deliver the alimony and support check byway of the children. He believes that she is manipulative and links his participation in family events (e.g., Nicole's CT Page 10489 5th birthday party) to the payment of monies. On occasion, he has heard his children say that "Daddy doesn't pay money." The court found him to be credible on this score.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-84, and46b-215a, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
4. That based upon her age, employment history, education and training, in particular her qualification as a CPA, and her previous earnings, the wife has an earning capacity of at least $45,000 per annum; and that it is equitable and appropriate to consider her earning capacity in making its orders regarding alimony and child support. Hartv. Hart, 19 Conn. App. 91, 94-95 (1989).
5. That the combined net weekly income of the parties is in excess of the maximum Child Support Guidelines amount; that presumptive minimum basic child support is $627.00 per week (inclusive of health insurance for the minor children); and that the husband's share is $500.00 per week.
6. That the fair market value of the jointly-owned real property at 21 Fillow Street, Westport, Connecticut is $500,000; that there are outstanding mortgage and home equity balances in the amount of approximately $340,000; that there is equity in the amount of $160,000; that same is a marital asset subject to equitable division; that over the course of the marriage, both parties contributed to the maintenance and preservation of same, but that the wife deposited the proceeds from the sale of her sole real property owned at the time of the marriage, amounting to approximately $59,000, to a mutual fund, a substantial portion of which was subsequently used for a down payment for the Westport property; and that it would be equitable and appropriate that the court give some consideration thereto in dividing this asset. CT Page 10490
7. That by Stipulation dated April 16, 2002, the parties agreed that the husband made payments as and for pendente lite alimony and child support in the aggregate amount of $95,000 during the period April 1, 2001 and November 22, 2001.
8. That on or about September 28, 2001, pursuant to a Stipulation dated September 17, 2001 (#111-10) the husband withdrew the sum of $74,000 from the home equity line; that said withdrawal was for the payment of estimated income taxes for the year 2001; that an additional $26,000 was authorized by said Stipulation to be withdrawn for the benefit of the wife, including the payment of household bills and her quarterly income taxes from 2001; that the husband provided support for the wife and minor children during the year 2001 in a sum in excess of said taxes; that during the pendency of this action, the wife used some marital funds for her sole benefit; that said income taxes are a marital debt; and that it is equitable and appropriate that both parties share in the repayment of said equity line.
9. That while the wife's written Claims for Relief seek sole custody of the two minor children, her counsel at trial represented to the court, in the presence of his client, that she would not press that claim; and that it is therefore in the best interest of the minor children that the court enter an award of joint custody. General Statutes § 46b-56a (b).
10. That, with the exception of the policy of insurance owned by the wife (Aetna AICPA) insuring the life of the husband, no credible evidence was introduced demonstrating the existence of any other policy or policies insuring the life of the husband; that no credible evidence was introduced by either party as to the ability of the husband to obtain additional life insurance and/or the cost of premiums for same; and that the Court is without authority to enter any orders regarding same. Michelv. Michel, 31 Conn. App. 338, 341-42 (1993); Wolf v. Wolf,39 Conn. App. 162, 171 (1995).
11. That the court may, but is not obligated to take into consideration the federal tax consequences of its financial award. Rolla v. Rolla,48 Conn. App. 732, 745-747 (1998).
12. That the court has taken note of the pendente lite orders; that the purpose of permanent lite orders is different from that of permanent orders Wolk v. Wolk, 191 Conn. 328, 330-331 (1983); and that the court may enter such permanent orders as it deems fair and equitable and is not bound by the pendente lite orders.
 ORDER
CT Page 10491
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. The husband and wife shall have joint legal custody of the minor children, Nicole Michaelis, born April 4, 1991, and Allison, born, March 29, 1995. The primary residence of the minor children shall be with the wife, subject to the reasonable, liberal and flexible visitation rights of the husband. Initial visitation with the husband shall be as set forth in Schedule A attached hereto and made a part hereof, and at such other times as the parties may agree. The parties shall consult with one another concerning all major issues involving the minor children, including but not limited to, health, education, and religious affirmation and training. In the event that the parties are unable to agree upon any issue regarding custody and/or appropriate visitation, they shall first bring the matter to the Family Relations Office prior to a determination by the Court.
3. Commencing September 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $2,167.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining child shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of the next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
In addition to the sums set forth above, as and for additional child support, the husband shall contribute to the religious education of each of the minor children up to and including high school, an amount not to exceed $1,000.00 per year per child. Any sums in excess of this amount shall be divided by the parties 25% to the husband and 75% to the wife. Furthermore, the husband shall contribute toward the extra-curricular activities (e.g. sports, music lessons, tutoring, etc.) and summer camp for each of the children up to and including the summer prior to their senior year of high school in an amount not to exceed $2,500 per year per child, and any sums in excess of this amount shall be divided by the 25% to the husband and 75% to the wife.
4. Commencing September 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $4,000.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or August CT Page 10492 31, 2012, whichever shall sooner occur. Pursuant to General Statutes § 46b-86 (a) the term of alimony shall, except for the foregoing, not be modifiable by either party.
5. The wife shall have exclusive possession of the jointly owned real estate located at 21 Fillow Street, Westport, Connecticut, subject to any existing indebtedness, and she shall be responsible for the payment of all mortgages (including the home equity line), liens, taxes, and insurance, and shall indemnify and hold the husband harmless from any further liability thereunder. As to said real estate, the parties shall list same for sale no later than March 1, 2013, with a mutually acceptable broker who is a member of the Multiple Listing Service or other similar organization, familiar with real estate values in the Westport area, at an agreed upon asking price. If the parties are unable to agree upon a broker, each shall choose a broker who, in turn shall pick a third broker, and the listing price shall be the average of all three brokers. Unless the parties shall otherwise agree, they shall accept any bona fide offer without unusual conditions, which is within 5% of the listing price. Upon sale of the property, from the proceeds shall be paid the customary and ordinary costs associated with a sale of real estate, including broker and attorney fees, conveyance taxes, and any mortgages and liens. After the payment of these sums, the net proceeds shall be divided 40% to the husband and 60% to the wife.
While she occupies same, the wife shall have the sole responsibility for the payment of the balance of the mortgage and home equity loan, if any, and the payment of insurance and real estate taxes until transfer of title or sale. She shall have the sole responsibility for repairs costing $250 or less. Both parties shall share the cost of any maintenance, repairs, or replacements in excess of $250 in the same proportion as their share of the net proceeds. Either party may advance the full cost of same and an adjustment shall be made at time of sale or transfer. Neither party shall further encumber the property or draw on any home equity without the agreement of the other. The Court shall retain jurisdiction with regard to any conflicts arising out of this issue.
6. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. The remaining home furnishings located at 21 Fillow Street, Westport (other than the children's furniture) shall belong to the wife free and clear of any claims by the husband.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased), together with any liens CT Page 10493 and/or obligations thereon, free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same.
D. The following assets shall be divided equally:
1. 28 shs. Momentum
2. 2250 shs. Peoplesoft
3. 66.58 (+) shs. Vanguard 500 Mutual Fund
4. 440.35 (+) shs. American Century Select Fund
5. 2000 joint Connecticut income tax refund
6. The balances remaming in any joint savings, checking, and money market accounts with the husband.
E. The wife shall be entitled to the following assets free and clear of any claims by the husband:
1. Aetna AICPA term insurance policy in the face amount of $2,000,000, insuring the life of the husband.
2. Chase/J.P. Morgan Vista account (approximately $1,000.00).
3. Chase sole checking account.
4. Charles Schwab Investment account (approximately $24,500).
F. The husband shall be entitled to the following assets free and clear of any claims by the wife:
1. Accumulated frequent flyer miles.
2. All right, title, and interest in and to SoLogical Solutions, LLC., inclusive of all savings, checking, and money market accounts.
7. Each party shall be entitled to keep his or her retirement assets free and clear of any claims by the other.
8. The wife shall maintain and pay for health insurance for each of the minor children so long as the husband shall be obligated to pay child support for either child, so long as it is an incident of her employment and can be obtained for a reasonable premium. In the event that such CT Page 10494 insurance is not available, the wife shall obtain an equivalent policy, and the husband shall reimburse her in an amount equal to one-half (1/2) of the premium within thirty days after she sends him a copy of the premium notice. Un-reimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by request of each of the parties, 50% by the husband and 50% by the wife. The provisions of General Statutes §46b-84 (e) shall apply.
9. The wife shall promptly notify her employer as to the change of marital status and shall cooperate with the husband in obtaining continuation health insurance coverage as provided by state and federal law. The husband shall be responsible for the payment of any premiums due for such coverage.
10. Except as other(vise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. Specifically, the wife shall be responsible for the alarm bill to the Westport Police Department and the debt to Cynthia Cashman.
11. Each party shall be responsible for their respective attorneys fees and costs incurred in connection with this action.
12. Commencing with the tax year 2002 and thereafter, the husband shall be entitled to the tax exemption for the minor child Nicole, and the wife shall be entitled to the exemption for the minor child Allison. Each shall promptly execute the necessary documentation and deliver same in a timely manner to the other for filing with the IRS and/or state taxing authority on an annual basis.
13. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
BY THE COURT
SHAY, J.
FA01 0183300 S : SUPERIOR COURT
JUDY MICHAELIS : JUDICIAL DISTRICT OF STAMFORD/NORWALK
V. : AT STAMFORD CT Page 10495
LAWRENCE MICHAELIS : AUGUST 20, 2002
 SCHEDULE A PARENTING ORDER
The husband shall have visitation with the minor children overnight every Tuesday and Thursday at 6:00 P.M. until start of school the following day, as well as every other weekend commencing Friday evening at 6:00 P.M. through Sunday at 8:30 P.M. In the event that the husband's weekend visitation falls during a holiday other than as set forth below, then his visitation shall extend to 8:30 P.M. on Monday. In addition, the parties shall, commencing this year, alternate the following holidays in succeeding years: Thanksgiving 2002 (husband); Christmas (December 24 and 25) 2002 (wife); Winter Break (week following Christmas commencing December 26 through January 2) 2002/2003 (husband); and Spring Break 2003 (wife). The husband shall have up to four weeks visitation during the Summer Vacation, provided that he notify the wife of his plans no later than May 1 of each year, and provided further that in any event, the children shall be with the wife during the last full week prior to the start of the new school year. If either or both children attend summer camp, it shall be scheduled so as not to interfere with the husband's visitation WHICH SHALL TAKE PRECEDENCE. The parties are hereby referred to the Family Relations Office if they are unable to work out any future visitation issues.