[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on September 16, 1984. There are three children of the marriage to wit: David, born January 7, 1986; Christopher, born January 24, 1990; and Claire born April 19, 1996. The parties have been living separate and apart since August of 2000. The children spend significant time with each parent pursuant to a Stipulated Parenting Agreement (#134) dated January 8, 2001.
The husband is 41 years old and college educated. He is in good health. He has had a succession of jobs while climbing the corporate ladder during the course of the marriage. Currently, he is a senior vice-president of MTV Networks (a VIACOM Company). He has a base salary of $303,000 a year together with a discretionary bonus which is tied to the company's performance. His 2001 bonus, paid in February 2002, amounted to $105,444. He also receives a vehicle allowance of $500.00 per month.
The wife is 39 years old and also in good health. She has a Bachelor of Science degree from Cornell University where the parties met. In addition to her homemaking and child rearing responsibilities, she has held a succession of jobs, some full-time and some part-time, throughout the marriage. Basically, she put her career plans "on hold" to attend to her homemaker functions, as well as to assist the husband along his own career path. Presently, she is working as a real estate broker with no significant income shown at the time of trial. However, her updated financial affidavit indicates that she earned $15,000.00 for the first eight months of 2002.
During the course of these proceedings the parties sold the marital residence at 8 Gault Avenue in Westport and divided the net proceeds. Each of the parties, in turn, purchased separate residences in Fairfield. Throughout the marriage the parties have accumulated a variety of assets some for retirement and others as savings vehicles. While the principal bone of contention appears to be his receipt of a payment of CT Page 13416 approximately $90,000 from his previous employer, Derby Cycle. This represented the repayment to him a mandatory $75,000 capital investment he made in connection with his employment, together with a sum calculated to offset any taxes which might become due and payable. In addition, the husband signed a promissory note to Derby Cycle in the amount of $225,000 which he claims is still a current debt, although no credible evidence was introduced to indicate that the company was actively pursuing that claim to date. The rub came when the husband repeatedly failed to disclose the payment of these monies, even after requests by the wife and her counsel. Subsequently, extensive further discovery efforts by the wife confirmed the payment and led to the belated production of relevant documents. Some evidence was introduced that all or a portion of these monies was spent by the husband. The wife is seeking her share of this asset, as well as some offset of her attorney's fees incurred due to the husband's deceptive failure to disclose a marital asset.
Throughout the marriage the wife's parents gave the couple gifts totaling approximately $160,000. This includes approximately $23,000, which represents the forgiveness of the balance of a $30,000 loan for the purchase of the husband's car.
The wife attributes the breakdown of the marriage to the fact that the husband was "not involved" with the house or the children, and to the fact that she felt "emotionally abandoned." She said that she was "treated like the hired the help," and that her husband was often "sullen and moody," refusing to discuss family issues. The couple tried counseling in late 1999 and early 2000, but the wife realized the husband was not going to change. She testified that she gained more than one hundred pounds over the course of the marriage, and in July of 1998, she started an exercise program and lost ninety-five pounds. For his part' the husband indicated that he encouraged the wife in her exercise program, indicating that it would be healthy for her to do so. He denies being uninvolved with the children, and he testified regarding many of the activities in which he participated with them. The husband attributes the breakdown of the marriage specifically to the wife's ongoing extramarital affair with one Brian Curry, whom she met in a computer chat room. He indicated that he suggested further counseling and asked the wife to recommit herself to the marriage. She indicated to him that she could not do so, and she continues to see Mr. Curry. Each must, therefore bear some responsibility for the breakdown of the marriage.
The case was heard over the course of four days including final argument. At the close of the hearing both parties submitted proposed orders. The plaintiff has in addition submitted a pleading entitled Claim of Facts Proven (#138.10) dated February 5, 2002. The defendant has filed CT Page 13417 a Motion for Order (#147) dated February 19, 2002 in which he objecting to the filing of plaintiff's claim of facts proven. For the record, the court did not consider the plaintiff's pleading in its decision since it is not in conformity with and well beyond the scope of P.B. § 25-30
which defines the nature of proposed orders. Subsequent to the last trial date, the wife asked the court to keep the evidence open until October 1, 2002, coincident with the effective date of P.A. 02-128 dealing with post-majority educational support orders. The wife also filed a Motion to Open Evidence (#148) dated June 27, 2002, referencing its earlier request and for the express purpose of introducing evidence of the husband's recently-received bonus. The court heard oral argument, accepted briefs, and rendered its decision on August 26, 2002, granting the wife's request to consider evidence of the bonus, and denying the relief sought by the wife regarding an educational support order. Due to the passage of time, the court asked both parties to file updated financial affidavits, which were filed by August 30, 2002, at which time the court considered the evidence closed. The husband included evidence of his bonus at that time.
 FINDINGS
The Court, having heard the testimony of both parties, and having considered the evidence presented at hearing, as well as the factors enumerated in General Statutes §§ 46b-56, 46b-81, 46b-82, 46b-84, and46b-215a, including the Child Support and Arrearage Guidelines Regulations, hereby makes the following findings:
1. That it has jurisdiction.
2. That the allegations of the complaint are proven and true.
3. That the marriage of the parties has broken down irretrievably, and that ample evidence exists that both parties have contributed to said breakdown.
4. That the parties have agreed to a certain parenting plan as set forth in a certain Stipulation re: Parenting Plan (#134) dated January 8, 2001, which the court finds to be in the best interest of the minor children.
5. That the combined net weekly income of the parties is in excess of the maximum Child Support Guidelines amount; that the presumptive minimum basic child support is $684.00 per week; and that the husband's share (including health insurance for the minor children) is $628.00 per week; and that it is equitable and appropriate under all the circumstances that CT Page 13418 the court enter support orders in excess thereof
6. That during the pendency of this action, the parties sold the marital home at 8 Gault Avenue, Westport, Connecticut; that they equally divided the net proceeds therefrom; that thereafter each invested their share in separate real properties which they currently occupy; and that it is equitable and appropriate that each retains title thereto free and clear of any claims by the other.
7. The court further finds that during his employment with Guinness Corporation, the husband has acquired an interest in certain pension; that based upon the testimony of the husband his interest is 40% vested at this time, but that it will fully vest by virtue of the passage of time; that said asset was accrued entirely during the term of the marriage; that both parties have proposed an equal sharing of this asset; and that said property is marital property subject to equitable division pursuant to General Statutes § 46b-81. Bender v. Bender,258 Conn. 733 (2001).
8. That throughout the marriage, until their separation, both parties made significant contributions to the acquisition, maintenance, and preservation of the family assets, including the real estate.
9. That during the course of settlement negotiations, the husband failed to disclose an anticipated payment from his former employer, Derby Cycle, in the approximate amount of $90,000; that said sum represented a return of a capital investment of $75,000 in said corporation, together with an amount calculated to offset anticipated taxes; that the husband has spent all or a portion of same for his own benefit; that said payment from Derby is a marital asset subject to equitable distribution; that the husband's failure to disclose same was wilfully deceptive and dishonest, as well as a breach of the discovery rules of this court, which breach was the direct cause of additional and unnecessary legal expenses incurred by the wife; and that it is equitable and appropriate that the husband pay a portion of the wife's legal expenses incurred thereby.
10. That in 1994, the wife inherited a stock portfolio from her grandmother; that since 1998 the wife has maintained the account in her sole name; that the current value of the account has appreciated to approximately $350,000; that the husband's contributions to the acquisition, maintenance, and preservation of this asset were deminimus; and that it is equitable and appropriate that the wife retains title to same free and clear of any claims by the husband.
11. The court further finds that since the date of his employment with CT Page 13419 MTV Networks (a business unit of Viacom, Inc.) in April 2001, the husband has a vested interest in certain stock options, vested and non-vested; that said property is marital property subject to equitable division pursuant to General Statutes § 46b-81. Bornemann v. Bornemann,245 Conn. 508 (1998); that the parties have been living separate and apart since August 2000, and the wife's contribution to the acquisition, maintenance, and appreciation of this asset has been de minimus; and that the court may take this into consideration in the division of this asset. Wendt v. Wendt, 59 Conn. App. 656, 663-64 (2000).
12. That the wife has requested the court to enter an unallocated alimony order; that the court has declined to do so; and that the court in the exercise of its equitable powers has entered appropriate financial orders under all the circumstances. Porter v. Porter, 61 Conn. App. 791,797-98 (2001).
13. That the parties have joint custody of the minor children; that a private school education will provide the minor children with more educational, athletic, and social benefits t; that the oldest child, David Fils-Aime, is currently enrolled in Fairfield College Preparatory School; that the father has sufficient income and assets to contribute to the cost of a private school education; that it is equitable and appropriate and in the best interest of the oldest minor child that he continue his enrollment in private school; that the remaining minor children would more likely than not benefit from a private school education and it would be in their best interest; and that the parties should contribute thereto. Carroll v. Carroll, 55 Conn. App. 18, 24
(1999); Flynn v. Flynn, 7 Conn. App. 745, 747, (1986).
14. That on August 24, 2001, the parties entered into a Stipulation which, inter alia, divided the proceeds from the sale of the former marital residence, acknowledged the division of the personal property and home furnishings of the parties, and reserved the issue of pendente lite alimony and child support retroactive to the date of the Stipulation; that any such order was to be tax free to the wife for the year 2001; that the husband has made certain payments without prejudice; that the wife filed a Motion for Retroactive Alimony (#133) dated January 8, 2002; that while the parties have asked the court to consider the tax consequences of any such order the court may but is not compelled to do so. Rolla v. Rolla, 48 Conn. App. 732, 745-747 (1998); that the purpose of pendente lite orders is different from that of permanent orders Wolkv. Wolk, 191 Conn. 328, 330-331 (1983); that under all the circumstances, the payments by the husband to the wife pendente lite since August 2001 are fair and equitable, shall be treated as unallocated alimony and support, non-taxable to the wife for the year 2001, and CT Page 13420 taxable to her thereafter; and that there is no arrearage in said payments, and the court, therefore declines to enter any further retroactive orders except as aforesaid.
15. That based upon the testimony and evidence, the wife has an earning capacity of at least $25,000 per year; that she is in good health; that she has a college degree; that she has the primary responsibility for the care of minor children which, for the present has a negative impact on her present earnings; that she has sufficient other assets, including an investment portfolio which will provide a measure of economic security; that she will be fully able to support herself as her child care responsibilities lessen; and that it is equitable and appropriate that she be awarded time-limited alimony. Ippollito v. Ippollito,28 Conn. App. 745, cert. denied, 224 Conn. 905 (1992).
 ORDER
IT IS HEREBY ORDERED THAT:
1. The marriage of the parties is hereby dissolved, and they are each hereby declared to be single and unmarried.
2. Custody and visitation shall be in accordance with the parenting plan adopted by the parties and set forth in a certain Stipulation re: Parenting Plan dated January 8, 2001, which the court incorporates herein by reference as Schedule A.
3. Commencing November 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $4,000.00 as and for periodic alimony, until the death of either party, the remarriage of the wife, or October 31, 2014, whichever shall sooner occur.
In addition, commencing November 1, 2002, for so long as he has an outstanding alimony obligation to the wife, within two (2) weeks after receipt by the husband of any gross additional cash compensation from his employment in excess of his base salary and vehicle allowance (including but not limited to any bonus or incentive compensation), the husband shall pay to the wife 30% of the first $100,000.00 of such gross additional cash compensation, and 15% of the next $150,000.00 of such gross additional cash compensation received in any calendar year, as and for additional periodic alimony, until the death of either party' the remarriage of the wife, or October 31, 2014, whichever shall sooner occur. Meaning and intending by this order that future additional periodic alimony shall be based upon the first $250,000.00 of the husband's additional cash compensation from employment, and that all CT Page 13421 additional cash compensation in excess thereof shall not be subject to a claim for additional periodic alimony. The husband shall provide satisfactory evidence to the wife of this additional cash compensation six months from the date of this order and every six months thereafter so long as he has an alimony obligation hereunder.
The term of alimony shall be nonmodifiable pursuant to General Statutes § 46b-86 (a).
The wife shall be entitled to earn up to and including $36,000.00 per annum from employment, before the husband can seek a modification of alimony on that basis alone.
4. Commencing November 1, 2002, and monthly thereafter, the husband shall pay to the wife the sum of $4,000.00 as and for child support, until such time as the oldest child shall reach the age of eighteen years, at which time child support for the remaining children shall be adjusted in accordance with the then existing Child Support Guidelines or as a Court may otherwise direct, and in like manner, at such time as the next oldest child shall reach the age of eighteen years. The foregoing notwithstanding, if any child shall turn eighteen years old and is still in high school, then, in that event, the child support shall continue until the first day of next month following graduation from high school or their nineteenth birthday, whichever shall sooner occur, pursuant to Section 46b-84 (b) C.G.S.
5. In addition to the sums set forth above, as and for additional child support, the husband shall contribute to the private school education of each of the minor children up to and including high school, in the amount equal to 100% of the first $10,000 per year per child. Any sums in excess of this amount shall be divided by the parties 25% to the husband and 75% to the wife. Furthermore, the husband shall contribute to the extracurricular activities, including summer camp, for each of the children up to and including the summer prior to their senior year of high school in an amount not to exceed $2,500 per year per child, and any sums in excess of this amount shall be divided by the 25% to the husband and 75% to the wife.
6. The wife shall retain all right, title, and interest in and to the real property located at 1086 Valley Road, Fairfield, Connecticut, which she currently occupies as her residence, free and clear of any claims by the husband, subject to any and all mortgages and liens for which she shall be solely responsible.
7. The husband shall retain all right, title, and interest in and to CT Page 13422 the real property located at 42 Commonwealth Avenue, Fairfield, Connecticut, which he currently occupies as his residence, free and clear of any claims by the wife, subject to any and all mortgages and liens for which he shall be solely responsible.
8. The husband shall maintain and pay for health insurance for each of the minor children so long as he shall be obligated to pay child support for that child. Unreimbursed medical, dental, orthodontic, optical, pharmaceutical, psychiatric, and psychological expenses for the minor child, shall be divided by the parties, 50% by the husband and 50% by the wife. The provisions of Section 46b-84 (e) C.G.S. shall apply.
9. The husband shall promptly notify his employer as to the change of marital status and shall cooperate with the wife in obtaining continuation health insurance coverage as provided by state and federal law. The wife shall be responsible for the payment of any premiums due for such coverage.
10. The husband shall maintain a portion of the existing group life insurance in the amount of $600,000, and shall name the wife and children as equal beneficiaries thereof so long as same is an incident of his employment and can be maintained at a reasonable premium, and for so long as he has an obligation to pay alimony and/or child support under the terms of this decree. The foregoing notwithstanding, the husband may reduce his obligation by $150,000.00 upon the termination of his alimony obligation, at which time he shall maintain $450,000 for the benefit of the remaining minor children for so long as he has a support obligation. The court specifically finds this obligation to be in the nature of support.
11. Personal property shall be divided as follows:
A. The children's furniture shall remain in the wife's residence.
B. Each party shall be entitled to the home furnishings (other than the children's furniture) presently in their possession in their respective homes per their Stipulation dated August 24, 2001.
C. Each party shall be entitled to keep the automobile which they are currently driving (whether owned or leased) free and clear of any claims by the other, and each party shall cooperate with the other regarding the execution of any documentation necessary to transfer and/or register same. Specifically, the husband shall be entitled to the 1995 BMW 525i and the wife shall be entitled to the 1997 Ford Expedition. CT Page 13423
D. The husband shall be entitled to the following assets free and clear of any claims by the wife:
1. Peoples checking account #006-0265563
2. Peoples checking/savings account #006-0234628
3. Citibank account #78801676
4. Citibank account #90769589
5. Salomon Smith Barney account in his sole name.
6. 18 Shares of PEP stock
7. 172.965 Shares of PG stock
8. All Viacom options, both vested and unvested.
E. The wife shall be entitled to the following assets free and clear of any claims by the husband.
1. IDS Life Insurance policy together with any cash value
2. Peoples checking account (joint w/Dorothy Gill)
3. Inheritance from her grandmother
F. The following joint assets shall be equally by the parties:
1. Charles Schwab investment account
2. Salomon Smith Barney investment account
3. Oakmark Fund
12. Within thirty (30) days from the date of this order, the husband shall pay from his portion of the assets following division pursuant hereto, to the wife as and for a lump sum payment as follows: $20,000.00 within thirty (30) days from the date of this decree, and an additional $17,500.00 on before July 1, 2003. The intent of this order is to offset in part the husband's receipt and use of the monies from Derby Cycle, specifically, the $75,000 repayment of the investment, and not including the additional $15,000. CT Page 13424
13. The retirement assets shall be divided as follows:
A. Effective as of the date hereof, the then balance of the Derby Cycle 401k Plan ("Plan") of the husband through his former employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the husband, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
B. Within thirty (30) days from the date hereof, the husband shall transfer to the wife a sum equal to 45.69% of each and every individual investment comprising the balance of the Charles Schwab IRA account #3277-2866 as of October 1, 2002, by means of a tax-free transfer.
C. Effective as of the date hereof, the Guinness Company Pension Plan ("Plan") of the husband through his former employer, together with any interest and/or additions accrued thereon as of the actual date of distribution, shall be divided by means of a Qualified Domestic Relations Order ("QDRO") which shall be prepared by the attorney for the husband, 50% to the husband and 50% to the wife. The wife and her attorney shall be entitled to any and all information regarding the Plan necessary to the preparation and filing of the QDRO, including, but not limited to prior and current balances and prior account activity. No withdrawals, distributions, or transfers shall be made regarding the Plan except as consistent with this order. The Court shall retain jurisdiction to deal with any issues which may arise with regard to the preparation and filing of the QDRO and the division of the Plan.
14. Except as otherwise set forth herein, the parties shall each be responsible for the debts as shown on their respective financial affidavits, and they shall indemnify and hold each other harmless from any further liability thereon. Specifically, the husband shall be responsible for any outstanding liability arising out of his obligation to Derby Cycle.
15. The wife shall be entitled to claim the personal exemption for each of the minor children commencing with the tax year 2002 and thereafter. CT Page 13425
16. The husband shall be liable for the payment of his legal fees and costs incurred in this action. Within thirty (30) days from the date hereof, the husband shall pay directly to the law firm of Rutkin Oldham, LLC the sum of $10,000.00 toward the attorney fees of the wife, and the wife shall be responsible for the balance of her fees.
17. The Court hereby orders an Immediate Wage Withholding Order pursuant to General Statutes § 52-362 in order to secure the payment of the alimony order.
 ___________________ SHAY, J.
 SCHEDULE A STIPULATION RE: PARENTING PLAN
1. The Husband and Wife shall have joint legal custody of the minor children who shall reside primarily with the Wife. The parties shall confer with each other on all important matters pertaining to the children's health, welfare, education and upbringing with a view toward arriving at a harmonious policy calculated to promote the best interests of the children.
2. The Husband shall have liberal parenting time with the children. The parties agree that the Husband's time with the children shall include, but not be limited to, the following:
(a) Weekends from Friday at 7:00 p.m. to Sunday at 8:30 p.m.;
(b) One mid-week visit for dinner from no sooner than 6:00 p.m. until no later than 8:30 p.m. on school nights, otherwise from 5:00 p.m. until 9:00 p.m., the date of which shall be scheduled on a mutually convenient evening and shall take into consideration the children's homework and social schedules as well as the Husband's work schedule. The Husband shall notify the Wife of the day of the mid-week visitation at least one week in advance, or upon shorter notification if the Wife agrees;
(c) The children's Christmas school vacation shall be split into two parts, the first being December 24 through December 27 and the second being December 28 through January 1. The children shall be with the Husband for the first segment of the Christmas school vacation during odd-numbered years and with the Wife during even-numbered years. Accordingly, the children shall be with the Husband for the second CT Page 13426 segment of this vacation during even-numbered years and with the Wife during odd-numbered years. The party without the children during the first portion of the vacation shall pick up the children at 10:00 a.m. on December 28th for their parenting time. If the children are with the Husband for the second portion of the vacation, he shall deliver the children to the Wife's home by 8:00 p.m. on January 1, unless otherwise agreed.
(d) The parties shall alternate the children's Thanksgiving school vacation, which begins the Wednesday before Thanksgiving at 8:00 p.m. and extends through the following Sunday at 8:00 p.m., with the Husband having the children with him for the Thanksgiving vacation in the even-numbered years and the Wife having the children with her for the Thanksgiving vacation in each odd-numbered year.
(e) The children shall spend Memorial Day weekend with the Husband, beginning at an agreed upon time no earlier than 4:00 p.m. on the Friday before Memorial Day through 8:00 p.m. the Monday of Memorial Day.
(f) The first six weeks of summer (end of June until beginning of August) are reserved for summer camp for all the children. If the camp they attend is not sleep-away, the Husband shall maintain his weekend and one weeknight schedule with those children who are home. The last four weeks of summer shall be split into two two-week segments, with the Husband having parenting time with the children during the first two weeks (including weekends, a total of sixteen consecutive days) in odd years, and the second two-week segment up to and including Labor Day in even years. The Wife shall have parenting time with the children during the first two-week segment in even years, and the second two-week segment in odd years. If, during the first six weeks of summer, there is a week where all three children are home and not attending camp, either parent can "trade" one of their other summer weeks for that week as long as both the Husband and Wife agree. The forfeited week would then follow the regular schedule of weekday and weekend visitation.
(g) On years when the children have two weeks of Winter/Spring break ("break") where both weeks coincide for all children, the Husband shall have the children for one week, including both weekends on either side, and the Wife shall have the children for the other "break." The parties shall alternate said "breaks" so that the Wife shall have the first "break" and the Husband shall have the second "break" during one year and the Wife shall have the second "break" while the Husband has the first "break" during the next year. For these Winter/Spring breaks, the years shall be based on the school calendar year. The Wife shall have the first "break" during the 2001/2002 school year and each school year beginning CT Page 13427 with an odd-numbered year thereafter. The Husband shall have the first "break" during the 2002/2003 school year and each school year beginning with an even-numbered year. Accordingly, the Husband shall have the second "break" during the 2001/2002 school year and each school year beginning with an odd-numbered year thereafter, while the Wife shall have the second "break" during the 2002/2003 school year and each school year beginning with an even-numbered year.
(h) There will be situations during which the children will have one week in common but an additional week that does not coincide. In these situations, one parent shall have parenting time with the children during the "coinciding week" and the adjoining weekends. The other parent shall have parenting time with the children three days of one week, the weekend, and three days of the next week, for a total of eight days during the "non-coinciding" vacation time. The parties hereby acknowledge that the "non-coinciding" week involves taking each of the children out of school for a few days, and the parent planning to do this will make arrangements with the school to notify teachers of the intended absence and to make up missed work. The parties shall alternate these "non-coinciding" and "coinciding" weeks. The Husband shall receive the "coinciding" week in 2001. The Wife shall have parenting time during the "noncoinciding" week in 2001. This paragraph 2.2 (h) shall supercede the above paragraph 2.2 (g) in the event this paragraph 2.2 (h) conflicts with paragraph 2.2 (g).
(i) The children shall spend Mother's Day with the Wife and Father's Day with the Husband notwithstanding the foregoing schedule. Each parent shall be entitled to spend time with the children on their respective birthdays and on the children's birthdays;
(j) In addition to the above, the Wife shall have three additional weekends each year with the children. One weekend shall be in February, one weekend shall be in October, and the third weekend shall be during a mutually agreeable month. The parties shall agree on the dates of these weekends at least one month in advance. If the parties cannot agree, the "default" weekend shall be the third weekend of the given month.
(k) The parent who will be beginning parenting time with the children shall be responsible to pick them up, i.e. the Husband shall pick the children up on Friday nights from the Wife's home or an agreed upon location, and the Wife shall pick the children up from the Husband's home or agreed upon location on Sunday nights. For the evening out during the week, the Husband shall both pick the children up from and drop them off at the Wife's home. Any time there is a transfer of the children from one parent to the other, the parent relinquishing the children is to have the CT Page 13428 children packed as necessary and ready to go at the appointed time.
(l) The parties agree to meet, discuss, and map out the scheduling of parenting times as set forth in this paragraph 2.2, which shall be based on an academic calendar, running September 1 through August 30, one year in advance by September 15 of each year. It is agreed that when a parent plans a trip with the children, he or she shall provide a trip itinerary and telephone numbers for the other parent no later than one week prior to said trip, or one month prior if the trip is out of the country.
(m) In the event of any dispute regarding the parenting time, the parties shall select a mediator, either court sanctioned or private, to assist the parties in dispute resolution before bringing any such dispute before the court. In the event that the issues cannot be resolved, the matter shall be referred to a court of competent jurisdiction for resolution.
3. If at any time either parent chooses to reside more than fifteen miles from Westport and this puts him or her more than fifteen miles from the other parent's residence, that parent shall be responsible for both picking the children up and dropping them off to exercise their scheduled parenting time. This criteria shall be in effect for any subsequent changes of residence as well.
4. Any expense or cost involved in the Husband's exercise of his visitation rights set forth herein shall be and remain his responsibility and will be paid for by him. Any such cost or expense shall be separate and apart from and in addition to any and all payments to be made to the Wife for the support of the children. In the event the Husband is unable to pick the children up for his agreed upon parenting schedule, then the Husband shall be responsible for any and all costs to arrange for childcare until such time as he is available to be with the children and such costs shall be deemed child support.
5. Each of the parties agrees to keep the other informed at all times of the children's general whereabouts while with the Husband or Wife, including the telephone number, and agrees that if either has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of either child, the Husband or Wife, as the case may be, will promptly notify the other.
6. To the fullest extent possible, the parties shall exert every reasonable effort to promote free access and unhampered contact between the children and each of the parties and to foster a feeling of affection between the children and the parties hereto. Each party shall exert his CT Page 13429 and her best efforts to refrain from doing anything to estrange the children from the other party, or to disparage the opinion of the children as to his or her mother or father, or to act in such a way as to hamper the free and natural development of love and respect between parent and child. Any and all major decisions affecting the general health, welfare, education, guidance, or other aspect of the upbringing of the children shall be made with the participation and involvement of both parents.
7. Promptly upon receipt, each of the parties shall furnish the other copies of any reports from third persons or institutions concerning the health, education or welfare of the children.
8. The parties shall have reasonable access to the children while they are with the other party, including free access by mail, email, fax and telephone during reasonable hours of the day and evening. Each party shall exercise visitation with the children in the home of the other only with the prior express consent of that person.
9. Except for midweek visitations, the children's dog shall go with the parent who has the child (ren) or shall be boarded at that parent's expense if he or she does not wish to care for the dog during his or her respective parenting time.
10. In the event that the wife desires to change the residence of the children outside the state of Connecticut, she shall give the husband not less than 90 days advance written notice.
THE PLAINTIFF THE DEFENDANT
___________________ ___________________ JANET FILS-AIME REGINALD FILS-AIME CT Page 13430