JUDY DIVITO *v.* BRIAN DIVITO
(AC 22445)

Foti, Dranginis and Bishop, Js.

Argued January 6—officially released May 27, 2003

*Robert S. Kolesnik, Jr.*, for the appellant (defendant).

*Arnold M. Potash*, with whom, on the brief, was *Kenneth M. Potash*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. The defendant, Brian DiVito, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Judy DiVito. On appeal, the defendant claims that the court improperly (1) awarded the plaintiff twice as much equity as the defendant in two parcels of real estate after indicating that it intended to divide the real estate equally between the parties, (2) found that the parties had agreed on the value of the defendant's one-half interest in one parcel of real estate, (3) allowed extensive dialogue by counsel for

the parties during the defendant's case, which prevented the defendant from presenting his case and (4) found that the defendant had had an extramarital affair. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On September 7, 2000, the plaintiff filed for a dissolution of the marriage on the ground of irretrievable breakdown. A trial was held on September 26, 2001, and on October 11, 2001, the court issued a memorandum of decision in which it rendered judgment dissolving the marriage of the parties on that ground.

In its memorandum of decision, the court also made the following findings of fact. The parties were married in Naugatuck on April 22, 1978. At the time of the dissolution, there were two adult children issue of the marriage, both of whom resided in the marital home with the plaintiff. Prior to the marriage, the plaintiff earned a bachelor's degree from Southern Connecticut State University. She worked as a schoolteacher at the time the parties were married. After the children were born, the plaintiff ceased working full-time and stayed at home to raise the children. When the children went to grade school, the plaintiff became employed for the borough of Naugatuck, where she worked for the next ten years as a full-time director of a child care program. The plaintiff claimed that while she was working in that position, she was subjected to harassment. The harassment was so severe that it ultimately caused her to resign. It also added a great deal of stress to the marriage. For the past two years, the plaintiff has been employed as a director of a child development program at Taft School in Watertown. In 1985, the plaintiff was diagnosed with cancer. She underwent two successful surgeries and has been cancer free since that time. At the time of the dissolution, the plaintiff was in generally good health.

The defendant graduated from Central Connecticut State University with a bachelor's degree in business. He has worked at a local bank throughout the marriage and, at the time of dissolution, was the bank manager. The court further found that both parties were responsible for the breakdown of the marriage, but that the defendant's extramarital affair contributed more to the breakdown of the marriage.

Additionally, the court found that the parties had worked equally hard throughout the marriage to acquire the marital assets listed on their respective financial affidavits, including the marital home, which they purchased about one year after they were married. The parties agreed that at the time of dissolution, the market value of the marital home was $165,000 and was encumbered by a mortgage of $62,000 for a net total equity of $103,000. At that time, the defendant also had a one-half interest in his mother's home at 67 Hickory Road in Naugatuck (Hickory Road property). That property had a market value of $130,000 and a mortgage of $26,000. The court found that the parties agreed that the defendant's interest in that property was $52,000.

In the judgment of dissolution, the court issued orders concerning, inter alia, distribution of the marital assets of the parties, including the two parcels of real estate, the marital home and the Hickory Road property. Specifically, the court ordered the defendant to transfer his interest in the marital home to the plaintiff and ordered the plaintiff to hold the defendant harmless from any liability related to that property. Additionally, the court ordered the plaintiff to release any interest she may have had in the Hickory Road property to the defendant.

On October 30, 2001, the defendant filed a motion for reargument, clarification or articulation. In his motion, the defendant first contended that page seven

of the court's October 11, 2001 memorandum of decision[1] contemplated an equal division of the total equity in the two parcels of real estate, yet, the court awarded the plaintiff the marital home, which had $103,000 in equity and awarded the defendant the interest in the Hickory Road property, which had only $52,000 in equity. The defendant argued that the court, therefore, must have made a mathematical error in dividing the real estate. Second, he contended that the court improperly valued his one-half interest in the Hickory Road property. Third, the defendant contended that the court improperly determined that he had engaged in an extramarital affair and that the affair contributed more to the breakdown of the marriage than other factors, without first allowing the defendant to be heard on what he believed was the cause of the breakdown of the marriage.

On November 30, 2001, the court heard argument on the defendant's motion for reargument, clarification or articulation. In its January 18, 2002 memorandum of decision on the defendant's motion, the court elaborated on the rationale for its orders. The court explained that it awarded the plaintiff the marital home, not because of a mathematical error, but rather because it accepted the plaintiff's argument in her proposed order that she wanted to continue to live in the marital home

[1] Page 7 of the court's October 11, 2001 memorandum of decision states in relevant part: "However, both of these two properties were acquired during the marriage. The parties agreed that the present market value of the marital home is $165,000 encumbered by a mortgage of $62,000 for a net equity of $103,000 and their respective one-half interest is worth $51,500. The market value of the home at 65 Hickory Road in Naugatuck is agreed to be worth $130,000 with a mortgage of $26,000 for a net value of $104,000. The defendant's one-half interest is agreed to be $52,000. In their proposed orders, the plaintiff wants the defendant to transfer his one-half interest in the marital home to her and that he retain the property he owns with his brother. The plaintiff believes this would be an equal exchange. The defendant wants the marital home to be sold and the net proceeds divided equally, and the defendant would retain his one-half interest in his mother's home."

with the adult children because it was the only home they had known. The court noted that in coming to the conclusion that it did, it considered all of the relevant criteria set forth in General Statutes § 46b-81, including the length of the marriage, the monetary and nonmonetary contributions of the parties, and the fact that the defendant was more at fault for the breakdown of the marriage than the plaintiff. The court also found that the defendant's interest in the Hickory Road property was $65,000.[2] Finally, the court reiterated its previous finding that the defendant had been involved in an extramarital affair. The court also noted that it believed the plaintiff's testimony that the affair was the primary cause of the breakdown. This appeal followed. Additional facts will be set forth as necessary for the resolution of the defendant's claims.

I

The defendant first claims that court improperly awarded the plaintiff twice as much equity as it awarded to the defendant in the two parcels of real estate after indicating during the trial that it intended to divide the real estate equally between the parties. In other words, the defendant claims that in its memorandum of decision, the court abused its discretion in awarding the marital home, the equity of which was $103,000, to the plaintiff and awarding the Hickory Road property, the equity of which was $52,000, to the defendant because the court had indicated, during the trial, that it would divide the real estate equally. The defendant further argues that the court's division of the real estate was the result of a mathematical error of the kind that occurred in *Ehrenkranz* v. *Ehrenkranz*, 2 Conn. App.

---

[2] Although the finding that the value of the defendant's one-half interest in the Hickory Road property was $65,000 is different from the finding in the October 11, 2001 memorandum of decision that the value of the defendant's one-half interest was $52,000, the defendant does not claim any error relating to the difference between those two findings.

416, 479 A.2d 826 (1984), and, therefore, requires reversal. Finally, the defendant argues that at the hearing on the motion for reargument, the court admitted that it had made a mistake in awarding the real estate. Those claims are wholly without merit.

As a preliminary matter, we set forth our standard of review. "With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . [J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the [trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann*, 245 Conn. 508, 530–31, 752 A.2d 978 (1998).

General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . . (c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." We also note "[i]t is well established that, in a dissolution action, the court may

distribute marital property unevenly." *Bleuer* v. *Bleuer,* 59 Conn. App. 167, 172, 755 A.2d 946 (2000).

The defendant urges this court to review specific pages of the trial transcript, which he claims supports his argument that the court intended to divide the equity in the real estate equally, rather than the orders contained in the court's memorandum of decision, to determine how the court intended to divide the real estate. In so doing, the defendant fails to appreciate that regardless of what the court may have indicated during the trial, the court did not render its decision regarding the distribution of the real estate of the parties until it filed its memorandum of decision with the clerk. Up until that time, the trial judge was entitled to change his mind. "Judges, like all other human beings, sometimes change their minds after further reflection on the evidence or the legal precedents controlling the conclusions to be drawn from the evidence. [W]hile [a decision] is still in the judge's possession . . . it is at best a proposed order subject to change along with the judge's thought process . . . ." (Internal quotation marks omitted.) *Stevens* v. *Hartford Accident & Indemnity Co.,* 29 Conn. App. 378, 382, 615 A.2d 507 (1992).

"A judgment is in fact rendered in a cause tried to the court when the trial judge officially announces his decision orally in open court, or, out of court, signifies orally or in a writing filed with the clerk in his official capacity the decision pronounced by him. . . . Where a memorandum of decision is the judgment of the court, [t]he judgment . . . is not rendered when the judge arrives at his decision in the privacy of his chambers but when the paper is handed to the clerk." (Citation omitted; internal quotation marks omitted.) Id., 381.

Furthermore, on the basis of our review of the trial transcript, we conclude that the court never gave any indication that it intended to divide the equity in the

real estate equally between the parties. On the contrary, the trial transcript reveals that although the parties had agreed that other marital property should be divided equally between the two, meaning that each party would get 50 percent of the total value, the parties did not agree on how the real property should be divided. On the one hand, the plaintiff asked that the court order the defendant to transfer his interest in the marital home to her and that the defendant retain his interest in the Hickory Road property. On the other hand, the defendant asked that the marital home be sold and that the net proceeds be divided equally between the parties, and that he retain his interest in the Hickory Road property. The decision as to how the real property was to be distributed was, therefore, a matter within the discretion of the court.

We conclude that because the court properly considered the relevant statutory criteria in fashioning its award of the real estate, the court did not abuse its discretion in awarding the plaintiff the parcel of property that had greater equity.

The defendant also contends that the court's decision as to the distribution of real estate is the result of a mathematical error of the type that occurred in *Ehrenkranz* v. *Ehrenkranz*, supra, 2 Conn. App. 416, and that at the hearing on the defendant's motion, the court admitted that it had made a mistake in dividing the real estate. We disagree.

In *Ehrenkranz*, this court held that the trial court's award was mathematically inconsistent and, therefore, plainly erroneous. Id., 423. In that case, the trial court awarded the wife the entire interest in the marital home. Id., 418. It then awarded the wife one half, or 50 percent, of the husband's net worth without first subtracting the value of the husband's interest in the marital home, which it already had awarded to the wife, from the

husband's net worth. Id., 418–20. Unlike the trial court in *Ehrenkranz*, the trial court in the present case did not employ a mathematical calculation in determining how the real estate should be distributed between the parties. The court simply awarded one parcel of real estate to the plaintiff, the marital home, and one parcel of real estate to the defendant, the Hickory Road property. This court's reasoning in *Ehrenkranz* is, therefore, inapplicable here.

Furthermore, we disagree with the defendant's contention that at the hearing on the defendant's motion for reargument, clarification or articulation, the court admitted that it had made a mistake in distributing the real estate. In its January 18, 2002 memorandum of decision on the defendant's motion for reargument, the court expressly stated that it did not make a mathematical error in awarding the marital home to the plaintiff. The court explained that it awarded the marital home to the plaintiff because it gave more weight to the plaintiff's position that she wanted the court to order the defendant to convey his one-half interest in the marital home to her because it is the only home that she and the parties' adult children have lived in throughout the marriage. Additionally, we conclude that the portions of the transcript that the defendant relies on in his brief are taken out of context and do not support his position that the court agreed with him that it had made a mistake in dividing the real estate.

## II

The defendant next claims that the court improperly found that the parties had agreed that the value of the defendant's one-half interest in the Hickory Road property was $52,000. We are not persuaded.

We begin our analysis of the defendant's claim by setting forth the appropriate standard of review. "We have long held that a finding of fact is reversed when

it is clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Mongillo* v. *Mongillo*, 69 Conn. App. 472, 476, 794 A.2d 1054, cert. denied, 261 Conn. 928, 806 A.2d 1065 (2002).

The following additional facts are necessary to our resolution of the defendant's claim. The defendant's parents originally owned the Hickory Road property. At some point prior to the dissolution, the defendant's parents conveyed that property to the defendant and his brother, who hold title jointly, and retained a life estate for themselves. The defendant, therefore, has a one-half interest in the Hickory Road property. The defendant's father has since died. The property is, therefore, subject to a life estate in the defendant's mother. On his financial affidavit, the defendant listed $52,750 as the total amount of equity that he had in the property.

During the trial, the parties agreed that the Hickory Road property had a market value of $130,000 and a mortgage of $26,000, for a net value of $104,000. The defendant argued, however, that in assigning a value to the defendant's one-half interest in the Hickory Road property, the court should consider that, if the property were sold, the defendant's share of the proceeds would be subject to capital gains tax.[3] The defendant also argued that the court should find that the value of his one-half interest in the Hickory Road property was further diminished by the fact that it was subject to his mother's life estate. In its memorandum of decision, the court found that the parties had agreed that the value of the defendant's one-half interest in the property was $52,000.

[3] The defendant asked the court to take judicial notice of the capital gains tax statutes.

We conclude that the court's finding that the parties had agreed that the value of the defendant's one-half interest in the Hickory Road property was $52,000 was not clearly erroneous. The parties did not dispute that the Hickory Road property had an appraised value of $130,000 and that the property was encumbered by a mortgage of $26,000. From those undisputed facts, the court reasonably could have deduced that the parties had agreed that $52,000 was at least a starting point in valuing the property.[4]

The fact that the court did not decrease the value of the defendant's one-half interest in the Hickory Road property because the proceeds from any sale of that property would be subject to capital gains tax or because the property was subject to a life estate does not render clearly erroneous the court's finding that the parties had agreed that the property was worth $52,000. "Under our law, a trial court is not *required* to consider the . . . tax consequences of its orders." (Emphasis in original.) *Rolla* v. *Rolla*, 48 Conn. App. 732, 746, 712 A.2d 440, cert. denied, 245 Conn. 921, 717 A.2d 237 (1998); see also *Damon* v. *Damon*, 23 Conn. App. 111, 114, 579 A.2d 124 (1990). "[N]either statute nor case law requires that a trial court consider the . . . tax implications of the financial awards." (Internal quotation marks omitted.) *Rolla* v. *Rolla*, supra, 747. "Although we have held that [a] court *may* consider the tax consequences of its orders in dissolution actions . . . and our Supreme Court has held such consideration to be proper . . . the cases have always used permissive rather than mandatory language with reference to a trial court's consideration of the tax consequences of its orders in dissolution actions." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 746–47. The statute also does not require

---

[4] We note that there was not evidence that the house was to be sold, which may have required that the court make further calculations.

the court to consider how the value of property is diminished by a life estate in assigning property in a dissolution action. See General Statutes § 46b-81. Moreover, the defendant, himself, indicated on his financial affidavit that the value of his one-half interest in the Hickory Road property was $52,750.

Accordingly, we conclude that there was evidence in the record to support the court's finding that the parties had agreed that the defendant's interest in the Hickory Road property was $52,000. It was not, therefore, clearly erroneous.

### III

The defendant next claims that the court improperly allowed an extensive dialogue by counsel for the parties during the defendant's case, which prevented the defendant from presenting his case. Specifically, the defendant maintains that the attorneys' dialogue was tantamount to having a final argument in the middle of the trial, which he claims interrupted his testimony. He claims that the court, thereafter, refused to allow him to complete his testimony concerning the marital breakdown and then entered orders against him that were based on the attorneys' arguments regarding the cause of the breakdown, rather than on the evidence.

At the outset, we note that the trial transcript does not support the defendant's characterization of what occurred at trial. Moreover, the defendant failed to object at trial to any of the conduct that he now alleges was improper. This court "shall be not bound to consider a claim unless it was distinctly raised at the trial . . . ." Practice Book § 60-5. Accordingly, we decline to address the claim.

### IV

Finally, the defendant challenges the court's finding that he had had an extramarital affair that contributed

more to the breakdown of the marriage than other factors. Specifically, the defendant contends that the court's finding that he had engaged in an extramarital affair is clearly erroneous because there was no testimony that he ever had a sexual, romantic or intimate relationship with any one other than the plaintiff. We are not persuaded.

Again, the defendant challenges a finding of fact. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Greco* v. *Greco*, 70 Conn. App. 735, 737, 799 A.2d 331 (2002).

The following facts are relevant to our resolution of the defendant's claim. The plaintiff testified that beginning in late 1996 or early 1997, the defendant became very distant toward her. It was about that time that the defendant indicated to her that he had found another woman and was going to start a new life with that person. The defendant moved out of the marital home a few days later, but that separation was short-lived; he returned a few days later. He moved out of the marital home again on June 1, 1998. The plaintiff subsequently learned that the woman that the defendant was referring to was Shirley Anne Lisieski, an employee at the bank where the defendant worked.

The plaintiff also testified that on New Year's Eve, 1999, while the defendant was visiting at the marital home, the defendant received a telephone call from Lisieski. A short time later, Lisieski left a package for the defendant on the doorstep of the marital home. The

package contained a shirt that the defendant had left at Lisieski's home. Lisieski testified that leaving the shirt on the doorstep was her way of letting the plaintiff know that she, Lisieski, was ending her relationship with the defendant. Lisieski also testified that she and the defendant were very good friends and that at some point they became something more than friends. The defendant testified that although he had had a relationship with Lisieski, it was not an intimate relationship.

"Where there is conflicting evidence . . . we do not retry the facts or pass upon the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier to determine. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Citations omitted; internal quotation marks omitted.) *Aetna Casualty & Surety Co.* v. *Pizza Connection, Inc.*, 55 Conn. App. 488, 498, 740 A.2d 408 (1999). Additionally, we note that a trier of fact is permitted to infer certain facts from the evidence presented. See *State* v. *Spells*, 76 Conn. App. 67, 77–78, 818 A.2d 808 (2003).

On the basis of the conflicting evidence presented in the present case, we conclude that the court's finding that the defendant had engaged in an extramarital affair was not clearly erroneous because it is supported by evidence in the record. Although the defendant testified that he did not have an intimate relationship with Lisieski, the court was free to disbelieve the defendant's testimony, and reasonably infer from the testimony of the plaintiff and Lisieski that the defendant had engaged in an extramarital affair with Lisieski.

It is true, as the defendant points out, that "[a] fact finder is not free to disbelieve uncontradicted testimony

and simply to conclude that the opposite of that testimony is true, especially where there is no evidence to justify that conclusion." *Daniels* v. *Alander*, 75 Conn. App. 864, 875, 818 A.2d 106 (2003). Such concerns, however, are not implicated in the present case. The court's finding is supported by reasonable inferences that were drawn from the testimony of witnesses other than the defendant. Accordingly, the court's finding is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.