FRANCES S. HARTNEY *v.* ROBERT J. HARTNEY
(AC 23717)
(AC 24206)

Dranginis, West and Stoughton, Js.

Argued April 2—officially released June 29, 2004

*James Colin Mulholland,* for the appellant (defendant).

*Edith F. McClure,* for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. These consolidated appeals arise out of the dissolution of the parties' forty year marriage. With respect to the judgment of dissolution, AC 23717, the defendant, Robert J. Hartney, claims that the trial court improperly (1) denied his motion for a new trial, (2) awarded alimony on the basis of the gross incomes rather than the net incomes of the parties, (3) ordered that he secure his alimony obligation with a policy of life insurance for the benefit of the plaintiff, (4) found that funds in a certain bank account were not his inheritance, (5) apportioned funds maintained in the parties' bank accounts and (6) concluded that he had the greater responsibility for the breakdown of the parties' marriage. As to the appeal from the judgment issuing a restraining order against him, AC 24206, the defendant claims that the court abused its discretion under General Statutes § 46b-15. We affirm the judgment of the trial court dissolving the parties' marriage and dismiss as moot the defendant's appeal from the judgment concerning the restraining order.

The following facts are relevant to our resolution of the appeals. The plaintiff, Frances S. Hartney, and the defendant were married in 1962. At the time of the dissolution hearing, the plaintiff was sixty-one years old, and the defendant was sixty-two. Both of them were in good health. They have three adult children. Until the time the dissolution action was pending, the couple had resided in the family home in Plainville. The

defendant was employed as a program manager by the Pratt and Whitney division of United Technologies Corporation. The plaintiff had been employed sporadically, part-time, outside the home while the children were young. She sought more regular employment beginning in 1990. At the time of the dissolution, she was employed full-time by LensCrafters, Inc.

The defendant was of the opinion that for many years, there was nothing wrong with the parties' marriage. The court, however, found that the marriage had been a troubled one for a long time. The defendant had been physically abusive, had an explosive temper and controlled the family's finances. Except for the family home, the assets accumulated during the marriage were in the defendant's name alone. The defendant admitted to being angry and depressed and that he had had a breakdown when the dissolution action was filed.

The court concluded that the marriage had broken down in 1990, if not earlier. In that year, the defendant was angry with the plaintiff and threatened to divorce her if she did not do as he wanted. The plaintiff took the defendant's threat to heart and began saving money in order to divorce him. The plaintiff initiated a dissolution action in 1998, but withdrew it when the parties entered marriage counseling at the defendant's request. The defendant's behavior did not benefit from counseling, and the plaintiff commenced a second dissolution action in January, 2001. The parties continued to reside in the family home until December, 2001, when the court issued a restraining order against the defendant pursuant to § 46b-15.

On August 2, 2002, following a July, 2002 trial, the court issued a memorandum of decision containing its support orders and division of property. Through inadvertence, the court neglected to order the dissolution of the parties' marriage. The defendant filed a motion

to reargue and for reconsideration on August 20, 2002. The court issued another memorandum of decision dated November 27, 2002, in which it corrected its oversight regarding the dissolution of the marriage and articulated some of its orders. The court stated that it had reconsidered the matters requested by the defendant, but declined to alter its orders regarding property distribution and the use of life insurance to secure the periodic alimony payments. The defendant thereafter filed a motion to open and to vacate the judgment, which the court denied. The defendant appealed from the judgment of dissolution.

I

APPEAL FROM THE JUDGMENT OF DISSOLUTION

The defendant raised six issues in his appeal. At the time of oral argument in this court, he withdrew his claim that the court improperly denied his motion for a new trial under General Statutes § 51-183b. We have reviewed the defendant's remaining claims and affirm the judgment dissolving the parties' marriage.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Hayward* v. *Hayward*, 53 Conn. App. 1, 7–8, 752 A.2d 1087 (1999).

"With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence. . . . [J]udicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the

[trial] court correctly applied the law and could reasonably have concluded as it did. . . . In making those determinations, we allow every reasonable presumption . . . in favor of the correctness of [the trial court's] action." (Citations omitted; internal quotation marks omitted.) *Bornemann* v. *Bornemann,* 245 Conn. 508, 530–31, 752 A.2d 978 (1998).

A

The defendant claims that the court improperly awarded the plaintiff alimony on the basis of the gross incomes, rather than the net incomes of the parties. We disagree.

In its memorandum of decision, the court found that the defendant earned $63,400 per year and the plaintiff earned $20,300 per year. The court ordered the defendant to pay the plaintiff alimony in the amount of $275 per week until the death of either party or the plaintiff's remarriage. Although the memorandum of decision did not refer to gross or net incomes, the defendant argues that the court improperly based its alimony award on the parties' gross incomes. The plaintiff has pointed out that the court heard testimony as to the net incomes of both of the parties, and the court stated that it had considered General Statutes § 46b-82[1] when fashioning its award of alimony.

---

[1] General Statutes § 46b-82 provides in relevant part: "At the time of entering the decree, the Superior Court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct *that security be given therefor* on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments *contingent on a life to the other party.* In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party . . . shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." (Emphasis added.)

Trial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes. If the court considers the relevant statutory criteria when making its alimony and support award, the award may not be disturbed unless the court has abused its discretion. See *Graham* v. *Graham*, 25 Conn. App. 41, 45, 592 A.2d 424, cert. denied, 220 Conn. 903, 593 A.2d 969 (1991). Nonetheless, a "trial court must base periodic alimony . . . orders on the available net income of the parties. . . . Gross earnings is not a criterion for awards of alimony. It is the net income, which is available to the [defendant], which the court must consider." (Internal quotation marks omitted.) *Ludgin* v. *McGowan*, 64 Conn. App. 355, 358, 780 A.2d 198 (2001).

Our review of the record, including the court's memorandum of decision, demonstrates that the court considered the statutory criteria of § 46b-82 when making its alimony award. The court also heard evidence regarding the parties' gross and net incomes. Furthermore, unlike the trial court in *Ludgin*, the court in this case did not make repeated references to or comparisons of gross income. Compare id.; see also *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 203, 572 A.2d 1032 (1990). We therefore conclude that the court did not abuse its discretion in awarding the plaintiff periodic alimony in the amount of $275 per week.

B

The defendant's second claim is that (1) the court's order regarding life insurance impermissibly extended alimony payments beyond his natural life and (2) the court's later clarification of the intent of the life insurance impermissibly changed the character of the life insurance from that of security for alimony payments to a property distribution. We are not persuaded.

The following facts are relevant to the defendant's claim. In its August 2, 2002 memorandum of decision, the court ordered that the defendant maintain a life insurance policy in the amount of $126,000, naming the plaintiff as the irrevocable beneficiary of the policy during the term of alimony.[2] The life insurance is to secure the alimony. In his motion for reconsideration, the defendant argued that because his obligation to pay alimony will terminate on his death, there is no need for any life insurance coverage, which is paid upon death. Also, he argued, the court's use of the word "secure" suggests that the court was imposing an order for collateral to secure the alimony payments during his lifetime. He argued that some other type of order would be more suited to that purpose. He therefore requested that the order concerning life insurance be vacated.

In its memorandum of decision on the defendant's motion for reconsideration, the court stated with respect to its life insurance order: "Contrary to the defendant's belief, this insurance is to provide the plaintiff a sum to replace rather than 'secure' the expected alimony income stream in the event of the defendant's demise. The court finds that it is appropriate where the alimony is periodic and for an uncertain, rather than a fixed duration."

Section 46b-82 governs the award of alimony in dissolution cases and provides in relevant part that "[a]t the time of entering the [dissolution] decree, the Superior Court may order either of the parties to pay alimony to the other . . . . The order *may* direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments

---

[2] The defendant's financial affidavit reveals that his life was insured by a policy of insurance in the amount of $126,000.

contingent on a life to the other party. . . ." (Emphasis added.) General Statutes § 46b-82. "An order directing a party to maintain life insurance as security for alimony is very often an appropriate and necessary component of a judgment of dissolution of marriage. Indeed, orders requiring the maintenance of life insurance have been approved on numerous occasions by our courts." (Internal quotation marks omitted.) *Cordone* v. *Cordone*, 51 Conn. App. 530, 533, 752 A.2d 1082 (1999).

Furthermore, our Supreme Court has determined that an order designating a spouse as the beneficiary of a life insurance policy is well within the court's equitable power. *Gallo* v. *Gallo*, 184 Conn. 36, 47, 440 A.2d 782 (1981). "Insurance premiums are paid during a decedent's lifetime and the proceeds flow directly to the beneficiary. This is not analogous to a claim of continued payment of periodic alimony from the estate of the deceased ex-spouse." Id., distinguishing *Harrison* v. *Union & New Haven Trust Co.*, 147 Conn. 435, 437, 162 A.2d 182 (1960), a case on which the defendant relies.

We conclude, therefore, that the court acted well within its discretion to order the defendant to secure his alimony obligation by means of a $126,000 insurance policy that he owned at the time of the dissolution.

As to his second claim that the court, in response to his request for reargument and reconsideration, changed the character of the purpose of the life insurance policy, we point out that the defendant asked the court to reconsider its life insurance order. The court affirmatively responded to his request, but declined to vacate its life insurance order and concluded that the plaintiff should be provided with income in the event of the defendant's demise. We can reach no conclusion other than that the defendant received what he requested, a reconsideration of the life insurance order.

C

The defendant's third claim is that the court improperly awarded one half of the funds in a certain Sovereign Bank account to the plaintiff as a portion of the division of marital assets. He claims that this division of the funds in the account was improper because he alone owned the account, and the funds therein were an inheritance he had received from his mother. We do not agree.

General Statutes § 46b-81 (a) provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ." The fact that the defendant, subsequent to his marriage to the plaintiff, received an inheritance from his mother "does not operate to exclude this property from the marital assets. Cf. *North* v. *North*, 183 Conn. 35, 39, 438 A.2d 807 (1981) (property acquired by inheritance may be assigned under § 46b-81)." *Watson* v. *Watson*, 221 Conn. 698, 711, 607 A.2d 383 (1992).

Here, the defendant has cited no law to support his argument that the court may not award funds acquired by inheritance as part of a property division in a dissolution action. Furthermore, the court did not credit the defendant's testimony that the funds in the Sovereign Bank account came wholly from his inheritance. The court found that the funds in the account came from his earnings. The court also found that the defendant's bank accounts had a troubled history, and that he had been ordered to restore funds he had removed from the accounts while the action was pending. See *DiVito* v. *DiVito*, 77 Conn. App. 124, 138, 822 A.2d 294 (court is arbiter of credibility, facts), cert. denied, 264 Conn. 921, 828 A.2d 617 (2003).

Under the circumstances of this case, the court did not abuse its discretion or misapply the law; see *Wei-*

*man* v. *Weiman,* 188 Conn. 232, 234–35, 449 A.2d 151 (1982); when it awarded the plaintiff one half of the funds in the Sovereign Bank account.

## D

The defendant's next claim is that the court improperly divided the funds the parties maintained in various bank accounts. In its memorandum of decision regarding the defendant's motion to reargue and for reconsideration, the court stated that it was unpersuaded by the calculations the defendant urged it to accept. According to the court, the defendant "fail[ed] to take into account what the distribution would have been without the deductions the court found the defendant should not have made."

Factual and credibility determinations are made by the trial court. *DiVito* v. *DiVito,* supra, 77 Conn. App. 138. The defendant failed to demonstrate that the court's findings were clearly erroneous, and he has cited no law in support of his claim. We therefore are unmoved by his argument.

## E

The defendant's final claim is that the court improperly determined that he was the greater cause of the marital breakdown. The basis of the defendant's claim is that the court found that during an argument between the parties in 1990, the defendant threatened the plaintiff with divorce. The plaintiff thereafter saved money in a bank account in order to finance the dissolution action that she initiated in 1998. The court concluded that the marriage broke down in 1990, if not earlier, and that the defendant largely was to blame, given his outbursts of temper and controlling nature. On the basis of our review of the record, we cannot conclude that the court's finding was clearly erroneous. See, e.g., *Jewett* v. *Jewett,* 265 Conn. 269, 692, 830 A.2d 193 (2003) (clearly

erroneous standard applies to finding fault for marital breakdown).

For the foregoing reasons, we affirm the judgment of dissolution.

II

APPEAL FROM THE JUDGMENT GRANTING THE
RESTRAINING ORDER

The defendant claims that it was improper for the court, postdissolution, to enter a restraining order against him, pursuant to § 46b-15,[3] because he did not present a continuous threat of present physical pain or physical injury to the plaintiff. The plaintiff has argued that we should not address the defendant's claim because it is briefed inadequately and because the issue is moot. Because the restraining order has been vacated, we dismiss the appeal as moot.

The following facts are relevant to the defendant's appeal. Although the dissolution action was pending, the parties continued to reside in the marital home at 5 Kari Drive in Plainville. On December 10, 2001, however, the court entered a restraining order against the defendant, and he vacated the premises. The restraining order was continued until the time of dissolution. As part of its judgment of dissolution, the court ordered that the plaintiff quitclaim her one-half interest in the family home to the defendant upon his payment of one half of the value of the premises.[4] The court

---

[3] General Statutes § 46b-15 (a) provides: "Any family or household member as defined in section 46b-38a who has been subjected to a continuous threat of present physical pain or physical injury by another family or household member or person in, or has recently been in, a dating relationship who has been subjected to a continuous threat of present physical pain or physical injury by the other person in such relationship may make an application to the Superior Court for relief under this section."

[4] The court's order regarding the family residence at 5 Kari Drive was stayed pending the defendant's appeal, which was addressed in part I.

ordered that the plaintiff have exclusive use of the premises until the defendant secured the funds necessary to purchase the plaintiff's share of the family home. In its August 2, 2002 memorandum of decision, the court ordered that the December, 2001 restraining order against the defendant be vacated because it was no longer needed.[5]

In January, 2003, the plaintiff again filed an application for a § 46b-15 restraining order against the defendant. The court granted the application, and the defendant filed a motion for reconsideration. In its memorandum of decision denying the defendant's motion for reconsideration, the court set forth its reasons for having granted the restraining order, including its findings that the defendant had twice broken into 5 Kari Drive, that he had stalked the plaintiff and that his appearance conveyed the impression that he could explode in anger at any time. The court concluded that his demeanor and behavior represented a present and continuous threat of physical harm to the plaintiff. The court entered the restraining order for a period of six months. The defendant appealed.[6]

At oral argument, the parties represented that the restraining order was vacated when the defendant paid certain moneys to the plaintiff and she transferred her interest in 5 Kari Drive to the defendant. The plaintiff, therefore, claims that the appeal is moot. We agree.

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs

[5] In its memorandum of decision dissolving the marriage, the court noted that the plaintiff had requested that the restraining order not be vacated.

[6] The plaintiff filed a motion to dismiss the appeal, claiming that because the restraining order was temporary in nature, there was no final judgment. This court denied the plaintiff's motion to dismiss the appeal from the judgment granting the restraining order because the trial court's action constitutes a final judgment for appeal purposes.

between the parties. . . . Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . The test for determining mootness of an appeal is whether there is any practical relief this court can grant the appellant. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Taylor* v. *Zoning Board of Appeals*, 71 Conn. App. 43, 46, 800 A.2d 641 (2002).

In this instance, the subject restraining order has been vacated, and there is no practical relief that we can provide. The defendant claims, however, that the issue is reviewable under the "capable of repetition, yet evading review" exception to the mootness doctrine. See *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 747, 830 A.2d 711 (2003) (otherwise moot question reviewable if challenged action or effect is of limited duration so that question becomes moot before appeal concluded and there is reasonable likelihood question will arise again and is of public importance); *In re Steven M.*, 264 Conn. 747, 754–55, 826 A.2d 156 (2003) (same). A moot appeal must be dismissed, unless all three prongs are met. *Tappin* v. *Homecomings Financial Network, Inc.*, supra, 747; *In re Steven M.*, supra, 755.

Although the defendant has cited the three-pronged rule, he has failed to analyze it and the facts of this case. In such instances, we deem the appellant to have abandoned the claim due to inadequate briefing. See *In re Shane P.*, 58 Conn. App. 234, 243–44, 753 A.2d 409 (2000). At first blush, however, it appears that the defendant has overlooked the fact that the restraining order was vacated pursuant to an agreement of the parties. The defendant himself, therefore, was complicit in causing the question to become moot, not the court or the circumstances of a restraining order issued pur-

suant to § 46b-15. We therefore dismiss the appeal as moot.

The judgment of dissolution is affirmed. The appeal from the judgment regarding the restraining order is dismissed.

In this opinion the other judges concurred.